ROSENBAUM, Circuit Judge,
dissenting:
I agree with the Majority that we incorrectly interpreted 28 U.S.C. § 2255(e) on at least five occasions: Wofford v. Scott, 177 F.3d 1236 (11th Cir. 1999), Gilbert v. United States, 640 F.3d 1293 (11th Cir. 2011) (en banc), Williams v. Warden, Federal Bureau of Prisons, 713 F.3d 1332 (11th Cir. 2013), Bryant v. Warden, FCC Coleman-Medium, 738 F.3d 1253 (11th Cir. 2013), and Mackey v. Warden, FCC Coleman-Medium, 739 F.3d 657 (11th Cir. 2014). And today, unfortunately, makes a sixth.
Though the Majority is right when it concludes that the existence of adverse circuit precedent on a prisoner’s claim has no relevancy to whether a second or successive claim may be brought under *1122 § 2255(e), the Majority’s analysis is not. itself faithful to the text of § 2255(e)’s so-called saving clause,[1] does not recognize the crucial constitutional-failsafe purpose that the saving clause serves, and does not acknowledge the role that the Suspension Clause plays in determining whether a second or successive claim may proceed under the saving clause. As a result, the Majority misses the fact that § 2255(e) must allow for consideration of second or successive claims that rely on a retroactively applicable new rule of statutory law.
The saving clause serves as a failsafe mechanism to protect § 2255 from unconstitutionality by providing a substitute remedy for habeas corpus relief that § 2255 otherwise precludes but the Suspension Clause may require.[2] And since the Suspension Clause exists to protect habeas corpus, the Suspension Clause demands, at a minimum, the availability of habeas corpus relief to redress federal detention when it violates the very doctrinal underpinnings of habeas review.
Habeas review, in turn, finds its doctrinal underpinnings in the doctrine of separation of powers and the principle of limited government powers. See Bousley v. United States, 523 U.S. 614, 620-21, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998) (characterizing separation-of-powers concerns as “the doctrinal underpinnings of habeas review”); see also Welch v. United States, - U.S. -, 136 S.Ct. 1257, 1268, 194 L.Ed.2d 387 (2016) (equating the principle of limited government powers with separation-of-powers concerns in federal habeas jurisprudence). So detention that violates the separation-of-powers doctrine or the principle of limited government powers necessarily tramples upon the doctrinal underpinnings of habeas review. See Bousley, 523 U.S. 614, 118 S.Ct. 1604; Welch, 136 S.Ct. 1257.
To remedy this affront to habeas corpus, new rules of statutory and constitutional interpretation that reveal detention in violation of the separation of powers or the principle of limited government powers are retroactively applicable on federal collateral review. In other words, these new rules of constitutional and statutory law are retroactively applicable on federal collateral review because the doctrinal underpinnings of habeas corpus — and therefore the Suspension Clause — require that they be.
And the very same concepts that, under the Suspension Clause, demand the retro-activity of new rules of constitutional or statutory law on initial collateral review— the separation-of-powers doctrine and the principle of limited government powers— apply with equal force in the context of second or successive claims for collateral review based on a previously unavailable retroactively applicable rule of constitutional or statutory law. When a prisoner is detained in violation of the separation of powers or the principle of limited government, the violation does not somehow become less significant simply because the Supreme Court does not recognize the violation by issuance of a new retroactively *1123 applicable rule of law until after the prisoner’s initial § 2255 claim has been resolved.
Indeed, § 2255(h)(2) implicitly recognizes this fact as it pertains to second or successive claims based on a new retroactively applicable rule of constitutional law. But since § 2255 does not authorize second or successive claims based on a retroactively applicable new rule of statutory law though the Suspension Clause requires courts’ consideration of such claims when a prisoner has not previously had a meaningful opportunity to have had such claims heard, the saving clause necessarily must allow these claims in order to save § 2255 from unconstitutionality.
Dan McCarthan’s claim relies on a new retroactively applicable rule of statutory law. So I would reverse the district court’s dismissal of his petition and remand for consideration of the merits.
This first sdction of this dissent explains why the text of § 2255 and Supreme Court jurisprudence on habeas corpus, the Suspension Clause, and retroactivity necessarily require that the saving clause allow for consideration of second or successive claims based on a new retroactively applicable rule of statutory law. Part II of the dissent addresses the Majority’s criticism of the theory I espouse in Part I. In Part III, I explore why the Majority’s construction of the saving clause cannot be correct under the statutory text and Supreme Court precedent. And in Part IV, I respond to Chief Judge Carnes’s concurrence.
I.
To assess whether the saving clause requires consideration of McCarthan’s second or successive claim, we must answer two questions: first, does the saving clause permit at least some second or successive claims? And second, if so, does the saving clause allow second or successive claims that, like McCarthan’s, are based on a new retroactive rule of statutory construction that, if applicable, would mean that the applicant has been imprisoned beyond valid congressional authorization? By itself, the statutory language of the saving clause tells us the answer to the first question is “yes.” To resolve the second, we must consult the statutory language and the Supreme Court’s jurisprudence on habeas corpus. Together, they reveal that the answer to the second question is also “yes.”

A. The language of the saving clause necessarily contemplates that the saving clause will be used to bring at least some types of second or successive claims.

In all cases of statutory construction, we start our analysis by examining the language of the statute for a “plain and unambiguous meaning with regard to the particular dispute in the case.” Barnhart v. Sigmon Coal Co., Inc., 534 U.S. 438, 450, 122 S.Ct. 941, 151 L.Ed.2d 908 (2002) (citation and internal quotation marks omitted). Our inquiry ends here as well if the statutory language is “unambiguous and the statutory scheme is coherent and consistent.” Id. (citation and internal quotation marks omitted). In this case, we can answer our first question — whether the saving clause allows for consideration of second or successive claims of at least some type — solely by consulting the statutory language.
The saving clause, in the context of § 2255(e), provides,
An application for a writ of habeas corpus in behalf of a prisoner who is authorized to apply for relief by motion pursuant to this section, shall not be entertained if it appears that the applicant has failed to apply for relief, by *1124 motion, to the court which sentenced him, or that such court has denied him relief, unless it also appears that the remedy by motion is inadequate or ineffective to test the legality of his detention.
28 U.S.C. § 2255(e) (emphasis added). The words “such court” refer to “the court which sentenced him,” so the words “such court has denied him relief’ unambiguously contemplate that a prisoner previously made at least a first § 2255 motion,[3] and his sentencing court denied it. That means that the claim that any such prisoner seeks to bring under the saving clause necessarily must be a second or successive claim. By'its language, then, the saving clause specifically requires courts to consider a prisoner’s second or successive claim when “it also appears that the remedy by [§ 2255] motion is inadequate or ineffective to test the legality of [the prisoner’s] detention.” Id.
Any reading of the saving clause that completely precludes courts from considering second or successive claims can achieve that result only by ignoring the language “such court has denied him relief’ and its natural meaning. But the court has a “duty to give effect, if possible, to every clause and word of a statute.” Duncan v. Walker, 533 U.S. 167, 174, 121 S.Ct. 2120, 150 L.Ed.2d 251 (2001) (citation and internal quotation marks omitted). When we do that in this case, we cannot escape the conclusion that the language of the saving clause plainly envisions consideration of at least some second or successive claims.[4]

B. Under the saving clause, a petitioner may 'bring a second or successive claim based on a new retroactively applicable rule of statutory law that means that his sentence exceeds what Congress has validly authorized.

Since the saving clause allows at least some second or successive claims, the question is, “Which ones?” When we view the terms of the saving clause in the light of Supreme Court precedent, the answer becomes clear. The saving clause allows for two categories of claims: (1) those that, though permissible under § 2255’s provisions other than the saving clause, cannot, for practical and logistical reasons, be brought under those provisions, and (2) those that cannot otherwise be brought under the other parts of § 2255 and that are constitutionally required to be considered, including those that assert a prisoner is detained in violation of the government’s, or a branch of the government’s, powers, as supported by a retroactively applicable new rule of substantive law.
To identify the particular second or successive claims for which the saving clause requires consideration, we must focus on, *1125 in particular, three parts of the language of § 2255(e): (1) “a prisoner who is authorized to apply for relief by motion,pursuant to this section”; (2) “legality of his detention”; and (3) “inadequate or ineffective to test.” Like a series of filters, each phrase limits the preceding universe of claims, yielding a successively smaller universe. So for a claim to be entitled to consideration under the saving clause, it must pass through all three filters.
1. “a prisoner who is authorized to apply for relief by motion pursuant to this section”
By making the saving clause applicable to “a prisoner who is authorized to apply for relief by motion pursuant to this section,” the first filter the saving clause imposes restricts its availability to sentenced federal prisoners who raise a type of claim that § 2255(a) permits. The unambiguous statutory language of § 2255 dictates this construction.
To explain why, we begin by evaluating § 2255 for any language that authorizes a petitioner to apply for relief. A review of § 2255’s language reveals that the only parts of it that “authorize” a “prisoner” to do anything include subsections 2255(a) and (d). Subsection (a) provides,
A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.
28 U.S.C. § 2255(a) (emphasis added). By directing that a “prisoner ... may move,” subsection (a) plainly authorizes a prisoner to apply for relief under the circumstances set forth in subsection (a). Id. (emphasis added).
Similarly, subsection (d) states that “[a]n appeal may be taken to the court of appeals from the order entered on the motion as from a final judgment on application for a writ of habeas corpus.” Id. § 2255(d) (emphasis added). Under our system, a losing litigant may take an appeal where permitted. So like subsection (a), subsection (d) authorizes an applicant to take action.
But none of the remaining parts of § 2255 “authorize” a “prisoner” to do anything. Rather, they give processing instructions to the court. Subsection (b), for example, states, in relevant part,
Unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall ... [engage in various actions]. If the court [makes certain findings], the court shall vacate and set the judgment aside and shall [take appropriate corrective action].
Id. § 2255(b) (emphasis added). Likewise, subsection (c) provides that “[a] court may entertain and determine such motion without requiring the production of the prisoner at the hearing.” Id. § 2255(c) (emphasis added). And subsection (g) enables the court to appoint counsel for proceedings under § 2255. See id. § 2255(g) (“[I]n all proceedings brought under this section, ... the court may appoint counsel....”) (emphasis added). Subsection 2255(h) tells the court how to process a second or successive motion. See id. § 2255(h) (“A second or successive motion must be certified ... by a panel of the appropriate court of appeals....”) (emphasis added). All of these parts of § 2255 instruct a court on how to handle a § 2255 application.
*1126 Finally, subsection (f), AEDPA’s statute of limitations, is either a jurisdictional requirement for the reviewing court or an affirmative defense for the defendant, depending on which circuit construes the provision. Compare, e.g., Williams, 713 F.3d at 1338-40,[5] with Acosta v. Artuz, 221 F.3d 117, 121-22 (2d Cir. 2000). Either way, it does' not purport to authorize a prisoner to do anything. A jurisdictional provision empowers a court to hear a case, while an affirmative defense is a tool that a defendant may use to bar suit.-
In short, only subsections (a) and (d) authorize a prisoner to take action.[6] So we must review those subsections to determine which prisoners subsections (a) and (d) permit to apply for relief under § 2255.
Beginning with subsection (d), as it pertains to prisoners, that subsection authorizes only appeals from denied claims brought under subsection (a). As a result, it does not expand the category of prisoners “authorized to apply for relief by motion pursuant to [§ 2255]” beyond what subsection (a) provides.
I therefore turn to subsection (a). By its terms, subsection (a) allows an applicant meeting four qualifications to seek relief under § 2255 (“A prisoner ... may move.... ”).
First, the language requires an applicant to be “[a] prisoner in custody.” 28 U.S.C. § 2255(a). That requirement is self-explanatory.
Second, the language “under sentence of a court established by Act of Congress” means that the prisoner must be a federal prisoner. See id.
Third, not just any federal prisoner may apply for relief under § 2255. Only federal prisoners who have been “sentence[d]” by a federal court are eligible to seek relief under the statute. See id. (“[a] prisoner ... under sentence ...”) (emphasis added). So, for example, a pretrial detainee may not use § 2255 to seek relief.
And last, under subsection (a) — and therefore under subsection (e) — only those sentenced federal prisoners “claiming the right to be released upon [a] ground [that subsection (a) specifies]” — “the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack,” id. — are “authorized” to bring a § 2255 motion.
The clause “claiming the right to be released upon the ground[s] [articulated in subsection (a) ]”[7] is a restrictive clause *1127 that modifies the subject clause in subsection (a) — “[a]- prisoner in custody under sentence of a court established by Act of Congress.” Restrictive clauses limit and define the subjects they modify, and unlike non-restrictive clauses, they are not set off by commas. See Strunk & White, supra, at 16. Significantly, the “claiming” clause in subsection (a) is not separated from the subject clause by a comma and is plainly intended as a restrictive clause. It therefore limits and defines the “prisoner in custody” clause. As Justice Scalia and Bryan Garner have noted, Congress is “presumed to be grammatical in [its] compositions.” Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 140 (2012). For this reason, only those sentenced federal prisoners in custody who are claiming one of the specific violations set forth in subsection (a) “may move” for relief — and are therefore “authorized to apply for relief’ — by § 2255 motion.
The Majority incorrectly contends that Congress intended under subsection (e) to include as prisoners “authorized” to bring a § 2255 motion, those prisoners bringing any type of collateral claim at all — not just the challenges to sentences that subsection (a) allows. See Maj. Op. at 1092-93. That cannot be correct for three independent reasons. First, as explained above, the text and grammatical structure of the saving clause do not bear the Majority’s proposed interpretation. Second, a comparison of the wording of subsections (a) and (e) does not support the Majority’s theory. And finally, the function of § 2255 has only ever dealt with federal prisoners’ sentencing claims and not indiscriminately with all kinds of collateral claims.
Turning to the second reason, if Congress had intended under subsection (e), as the Majority suggests, to include as prisoners “authorized” to bring a § 2255 motion, those prisoners bringing any kind of collateral claim, Congress had a ready way of expressing that — which it chose not to use. In subsection (e), Congress could have relied on the phrase “[a] prisoner in custody under [order] of a court established by Act of Congress,” similar to what it employed in subsection (a) before limiting that phrase with a laundry list of specific permissible claims. See 28 U.S.C. § 2255(a), (e). Had Congress done so, it would have authorized consideration of any collateral claim of a federal prisoner — not just collateral claims relating to sentencing.
But Congress did not do that.
Instead, it relied on- a different and slightly longer phrasing. Under subsection (e) as Congress actually enacted it, that provision allows for consideration of an application from only “a prisoner who is authorized to apply for relief by motion pursuant to this section.” Id. § 2255(e). So “a prisoner who is authorized to apply for relief by motion pursuant to [§ 2255],” id. must mean something different than “[a] prisoner in custody under [order] of a court established by Act of Congress,” id. § 2255(a), because “[w]e generally seek to respect Congress’ decision to use different terms to describe different categories of people or things.” Mohamad v. Palestinian Auth., 566 U.S. 449, 132 S.Ct. 1702, 1708, 182 L.Ed.2d 720 (2012).
And, indeed, the phrase does mean something different. “[A] prisoner who is authorized to apply for relief by motion pursuant to [§ 2255],” 28 U.S.C. § 2255(e), necessarily means a sentenced federal *1128 prisoner in custody who seeks relief on one of the claims specified in subsection (a)— that is, a federal prisoner in custody after sentencing, who is “claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack,” id. § 2255(a).
Returning to the language of subsection (e), it provides that the habeas petition of a prisoner “authorized to apply for relief’ under § 2255 “shall not be entertained if it appears that the applicant has failed to apply for relief, by [§ 2255] motion ... unless it also appears that the remedy by [§ 2255] motion is inadequate or ineffective to test the legality of his detention.” Id. § 2255(e). This language expressly contemplates that the saving clause allows courts to consider habeas petitions of only those prisoners bringing one of the four types of claims articulated in § 2255(a), and only'if “it also appears that the remedy by motion is inadequate or ineffective to test the legality of [the prisoner’s] detention.”
Not surprisingly, this straightforward interpretation is also entirely consistent with § 2255’s intended function — to provide, a more practical substitute remedy for habeas corpus in cases of federal prisoners who challenge their sentences. Congress enacted § 2255 in 1948 to address the problems created by large-scale administration of habeas corpus. Among other practical problems, it was not economical to haul multiple witnesses across the country for a hearing on a collateral challenge to a sentence in a forum where the prisoner had not been sentenced. See United States v. Hayman, 342 U.S. 205, 212-14, 72 S.Ct. 263, 96 L.Ed. 232 (1952). Doing so imposed both the expense of transporting the witnesses from their home district to the district where the prisoner was housed and the judicial cost of requiring a second judge to familiarize herself with the prisoner’s case and sentencing. So Congress passed § 2255 as a habeas substitute that did not in any way limit the substantive scope of habeas but merely shifted the forum for cases involving sentenced federal prisoners challenging their sentences, to the district of the sentencing court, often a district different from the district of confinement. See id. at 219, 72 S.Ct. 263; Swain v. Pressley, 430 U.S. 372, 377-78, 97 S.Ct. 1224, 51 L.Ed.2d 411 (1977).
The practical concerns that motivated the enactment of § 2255 pertain to claims involving sentencing and related conviction challenges, so by its terms, § 2255 provides a substitute remedy for habeas corpus for only those collateral claims that raise sentencing and related conviction challenges. See 28 U.S.C. § 2255(a) (federal prisoners may bring claims under § 2255 “claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or [that the sentence] is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence”) (emphasis added).
Indeed, the same concerns of financial expense and cost in judicial economy do not apply in the context of other types of collateral claims, such as execution-of-sentence claims. In execution-of-sentence claims, witnesses are generally located in the district where the § 2241 claim is filed, and familiarity with the prisoner’s underly *1129 ing case and sentencing is not required to the same extent as in sentencing claims, if it is required at all.
So collateral claims that do not raise challenges to a prisoner’s sentence have been able to be brought in habeas corpus under § 2241[8] since its enactment at the same time as § 2255,[9] and those claims have never been affected in any way by § 2255. See 28 U.S.C. § 2241; see also Antonelli v. Warden, U.S.P. Atlanta, 542 F.3d 1348, 1352 (11th Cir. 2008) (“challenges to the execution of a sentence, rather than the validity of the sentence itself, are properly brought under § 2241”). True, collateral claims attacking the validity of a federal conviction and sentence normally may not be brought in a habeas petition under § 2241 — but only because § 2255 expressly carves out those specific claims from § 2241’s authorization of courts’ consideration of habeas claims. See 28 U.S.C. § 2255(e). Since § 2255 does not cover non-sentencing claims in the first place, there is no need for — and, indeed, it would make no sense for — the saving clause to exempt from § 2255’s coverage collateral claims that do not raise sentencing challenges.
To summarize, (1) the plain meaning and grammatical structure of the text of subsections (e) and (a); (2) the deliberate difference between the phrasing of “a prisoner who is authorized to apply for relief by motion pursuant to [§ 2255],” 28 U.S.C. § 2255(e), and “[a] prisoner in custody under sentence of a court established by Act oí Congress,” id. § 2255(a); and (3) the fact that § 2255 has only ever dealt with federal prisoners’ sentencing claims and not execution-of-sentence or pretrial-detention claims, all demand the following conclusion: the first limitation subsection (e) unambiguously imposes on the availability of habeas-corpus relief through the saving clause requires that a petitioner be a sentenced federal prisoner in custody who is making a claim expressly authorized by subsection (a).
2. “legality of his detention”
Next, subsection (e) filters the universe of claims that a qualifying prisoner may otherwise raise under subsection (a), allowing through only those claims that test the “legality of [the applying prisoner’s] detention.” See 28 U.S.C. § 2255(e). The plain language of this phrase limits eligible claims to only those where the prisoner’s success on his claim would result in a reduced period of detention.
For example, a prisoner may be sentenced to two or more concurrent terms of imprisonment. If that prisoner does not challenge the conviction or sentence that resulted in the longest period of imprisonment, he does not challenge the “legality of his detention.” That’s because even if that prisoner succeeds on his claim, he will remain legally detained for the exact same period for which he was to be detained before he filed his claim, since his unchallenged sentence requiring that will remain in force. In that instance, the saving clause *1130 does not reach the prisoner’s § 2255(a) claim. See, e.g., Brown v. Warden, FCC Coleman-Low, 817 F.3d 1278, 1284 (11th Cir. 2016) (“When a prisoner has only one conviction and sentence, his detention is legal as long as his sentence is legal. However, if a prisoner is serving multiple sentences, his detention may be legal even if one of his sentences is not.”). So not all § 2255(a) claims necessarily challenge the “legality of [a prisoner’s] detention.” And only those that do survive § 2255(e)’s second filter.
3. “inadequate or ineffective to test”
Finally, we come to § 2255(e)’s third filter: “inadequate or ineffective to test.” 28 U.S.C. § 2255(b). Congress’s use of the disjunctive in the phrase “inadequate or ineffective” has significance. When Congress employs the word “or,” “the words it connects are to be given separate meanings.” Loughrin v. United States, - U.S. -, 134 S.Ct. 2384, 2390, 189 L.Ed.2d 411 (2014) (citation and internal quotation marks omitted). So in the saving clause, the words “inadequate” and “ineffective” have different and distinct meanings. And because these words are joined by “ór,” a prisoner must demonstrate that his claim satisfies only one of these standards (though some claims will satisfy both): the remedy by § 2255 must be either “inadequate” or “ineffective” for a prisoner’s claim to pass through § 2255(e)’s third filter.
The Majority' resists this intuitive interpretation, turning the natural meaning of “or” on its head. In the Majority’s view, the saving clause uses “or” to “introduce[ ] a synonym or definitional equivalent.” Maj. Op. at 1087-88 (citing Scalia & Garner, supra, at 122). So under the Majority’s analysis, Congress intended for “inadequate” and “ineffective” to mean the same thing in the saving clause.
Notably, the “synonym-introducing or” exception that the Majority relies on “is typically set off by commas.” Scalia & Garner, supra, at 122. But that is not the case with the words “inadequate or ineffective” in the saving clause.
So, to explain how it reaches this conclusion that the far less natural “synonym-introducing or” exception to the conjunctive/disjunctive canon applies to the “or” in the saving clause, the Majority simply states that “it is the better reading of the text when the terms share the same ordinary meaning.” Maj. Op. at 1088. But this reasoning is circular: to decide the meanings of “inadequate” and “ineffective” in the saving clause, the Majority relies on the “synonym-introducing or” exception, which it, in turn, relies on because it finds that the words have the same meaning.
Habeas is a specialized area of the law, and in specialized areas of the law, words are often endowed with specialized meanings — creating “terms of art” — as in the case of the saving clause. Indeed, both “inadequate” and “ineffective” are used in habeas jurisprudence as legal terms of art. But the Majority does not even consider this fact.
And the Majority’s application of the “synonym-introducing or” exception to the conjunctive/disjunctive canon cannot be correct for another reason: the Majority’s interpretation of “inadequate” and “ineffective” as definitional equivalents does not account in any way for the saving clause’s crucial constitutional-failsáfe function. See infra at 1132-34.
Since the “or” in the saving clause indicates that “inadequate” and “ineffective” have different meanings from each other, we must consider what each word encompasses. We apply the meanings these words have acquired through Supreme Court habeas precedent. .

*1131
a. “inadequate ... to test”

Beginning with the term “inadequate,” this term of art appears in the jurisprudence of equity, of which habeas jurisprudence is a part. See Boumediene, 553 U.S. at 780, 128 S.Ct. 2229 (“Habeas ‘is, at its core, an equitable remedy ” (quoting Schlup v. Delo, 513 U.S. 298, 319, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995))). It is well established that a remedy at law is “inadequate” if it is not “as complete, practical and efficient as that which equity could afford.” Terrace v. Thompson, 263 U.S. 197, 214, 44 S.Ct. 15, 68 L.Ed. 255 (1923).
Applying that concept in the context of the saving clause, and giving effect to a significant part of the congressional motivation behind § 2255’s enactment (dealing with practical problems that arose under the pre-§ 2255 habeas regime, see supra at 1128), § 2255 is inadequate if practical considerations effectively or actually render the procedures § 2255 establishes unavailable for testing the legality of a prisoner’s detention. So, for example, imagine a physically challenged or medically limited prisoner who, at the time that the saving clause was originally enacted in 1948, was housed in a different district from where he was sentenced and was a necessary witness in his collateral case, though he could not travel. One possible solution could involve allowing the prisoner to use the saving clause because, in that case, the review provisions of § 2255 might not be able to, as a practical matter, provide a remedy. The saving clause then opens the gateway to habeas corpus to allow such a prisoner access to collateral relief.[10]
*1132 When we apply these considerations in a case like McCarthan’s, though, we see that § 2255 does not provide an “inadequate” remedy because the prisoner in such a case does not have the type of practical or logistical problems in using § 2255’s remedy mechanism that the word “inadequate” contemplates.

b. “ineffective to test”

On the other hand, § 2255’s remedy, or procedures, are “ineffective to test” the legality of a prisoner’s detention when the prisoner files a second or successive claim like McCarthan’s, asserting that a retroactively applicable new rule of statutory law means that the prisoner’s sentence exceeds what Congress has validly authorized.
The term “ineffective” is a term of art in Sixth Amendment claims, a frequent subject of habeas jurisprudence. In this context, “ineffective” means “constitutionally deficient,” as in “ineffective assistance of counsel.” See, e.g., Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); see also Powell v. Alabama, 287 U.S. 45, 71-72, 53 S.Ct. 55, 77 L.Ed. 158 (1932) (noting that “the right to have counsel appointed, when necessary, is a logical corollary from the constitutional right to be heard by counsel” and holding that “under the circumstances ..., the necessity of counsel was so vital and imperative that the failure of the trial court to make an effective appointment of counsel was likewise a denial of due process within the meaning of the Fourteenth Amendment.”).
Though, like me, the Majority also looks to the context of “ineffective assistance of counsel” for instruction on the meaning of “ineffective,” see Maj. Op. at 1088-89 (quoting Brown v. Caraway, 719 F.3d 583, 597 (7th Cir. 2013) (Easterbrook, C.J., concerning the circulation under Circuit Rule 40(e))), it nonetheless opines that this dissent “takes this analogy too far when it asserts that because the ineffective assistance of counsel creates a constitutional deficiency under the Sixth Amendment, the term ‘ineffective’ means ‘constitutionally deficient’ ” in the saving clause. Id.
But the Majority offers no reason why that is so — especially considering that ineffective-assistance claims are nearly exclusively decided in the context of collateral review (particularly in the Eleventh Circuit).- Instead, the Majority just conclusorily asserts that the meaning of “ineffective” in the saving clause cannot be “constitutionally deficient.” I respectfully disagree.[11]
Section 2255 is “ineffective” — or constitutionally deficient — when it fails to allow for consideration of any claims authorized *1133 by § 2255(a) that the minimum constitutional requirements of habeas corpus that the Suspension Clause of the Constitution imposes, demand. As relevant here, the Suspension Clause requires that prisoners (1) have a “meaningful opportunity” (2) to have a court consider any claim that relies on a new retroactively applicable rule of law that reveals that a petitioner’s sentence exceeds what Congress has validly authorized.
To explain why, we start by considering why the saving clause must authorize consideration of any claims that the Suspension Clause requires if such claims may not be reviewed under any other part of 28 U.S.C. § 2255.
The Suspension Clause of the Constitution provides, “The Privilege of the Writ of Habeas Corpus shall not be suspended, unless when in Cases of Rebellion or Invasion the public Safety may require it.” U.S. Const. art. I, § 9, cl. 2. This provision constitutionally “secure[s] the writ [of ha-beas corpus] and ensure[s] its place in our legal system.” Boumediene, 553 U.S. at 740, 128 S.Ct. 2229. As the Supreme Court has explained, “The Framers viewed freedom from unlawful restraint as a fundamental precept of liberty, and they understood the writ of habeas corpus as a vital instrument to secure that freedom.” Id. at 739, 128 S.Ct. 2229.
Since the Suspension Clause protects the writ of habeas corpus under the Constitution, the Supreme Court has always construed the saving clause of § 2255 to ensure access to the writ of habeas corpus commensurate with what the Suspension Clause constitutionally may require, to the extent that the rest of § 2255 does not provide for such review.[12] See id. at 776, 128 S.Ct. 2229 (“The [Supreme] Court placed explicit reliance upon [the saving clause] provisions in upholding [28 U.S.C. § 2255 and the District of Columbia equivalent of § 2255] against constitutional challenges.” (citing Swain, 430 U.S. at 381, 97 S.Ct. 1224; Hayman, 342 U.S. at 223, 72 S.Ct. 263)). The Supreme Court has expressly warned that failure to interpret the saving clause in this way would raise “serious question[s] about the constitutionality of [§ 2255].” Id. (quoting Swain, 430 U.S. at 381, 97 S.Ct. 1224 (internal quotation marks omitted)). Put simply, the saving clause plays the critical role of a constitutional failsafe for § 2255.
For this reason, the saving clause must require consideration of any second or successive claims that the Suspension Clause protects but the rest of § 2255 fails to permit. If the saving clause did not, § 2255 would violate the Suspension Clause.
So we must consider the constitutional demands of the Suspension Clause. As explained next, Supreme Court precedent shows that, at a minimum, the Suspension Clause requires that prisoners have a “meaningful opportunity” for judicial consideration of any claim that a court has imposed detention in violation of the government’s powers, whether because of a violation of the doctrine of separation of powers or a violation of the principle that our government is one of limited powers. As a result, a prisoner may show that § 2255 is constitutionally deficient under the Suspension Clause if his claim meets two requirements: (1) the claim must assert that his detention violates the principles of separation of powers or limited government, or both; and (2) the prisoner *1134 must not have had a “meaningful opportunity” to have brought this claim previously.

i. At a minimum, the Suspension Clause requires consideration of claims alleging that a prisoner’s imprisonment was imposed in excess of government powers.

We begin by considering the types of claims that the Suspension Clause requires be heard. As Supreme Court precedent demonstrates, the Suspension Clause demands consideration of claims raising challenges that a sentence was imposed in excess of a government branch’s valid powers.
The Supreme Court has described the separation of powers as the “essential design of the Constitution.”[13] Boumediene, 553 U.S. at 745, 128 S.Ct. 2229. To help ensure the continuing vitality of our system . of government, the Framers viewed the writ of habeas corpus, in turn, as “an essential mechanism in the separation-of-powers scheme.” Id. at 743, 128 S.Ct. 2229; see also id. at 765, 128 S.Ct. 2229 (“the writ of habeas corpus is itself an indispensable mechanism for monitoring the separation of powers”). They similarly emphasized the important role that habeas corpus plays in “preserving] limited government.” Id. at 744, 128 S.Ct. 2229 (citing The Federalist No. 84 (Alexander Hamilton)).
So,' at its core, habeas corpus is about keeping government powers in constitutional check. It accomplishes this crucial function by requiring consideration of claims where, a prisoner tests the legality of his imprisonment on the basis that, in jailing him, at least one of the branches of government violated the separation of powers or the principle of limited government by exceeding its constitutional powers.
The Suspension Clause, in turn, safeguards the writ of habeas corpus, so it necessarily constitutionally requires consideration of claims revealing that a branch of the government has exceeded its constitutional powers to the same extent that habeas does. Indeed, the Supreme Court has explained that the Suspension Clause “protects the rights of the detained by a means consistent with the essential design of the Constitution ... to maintain the ‘delicate balance of governance’ that is itself the surest safeguard of liberty.” Boumediene, 553 U.S. at 745, 128 S.Ct. 2229 (quoting Hamdi v. Rumsfeld, 542 U.S. 507, 536, 124 S.Ct. 2633, 159 L.Ed.2d 578 (2004) (plurality opinion)). For this reason, the separation-of-powers doctrine and the principle of limited government powers “must inform the reach and purpose of the Suspension Clause.” Id. at 746, 128 S.Ct. 2229 (emphasis added).
That brings us back to the critical role of the Suspension Clause in understanding the meaning of § 2255(e). As we have already established, § 2255(e) must allow for consideration of all § 2255(a) claims protected by the Suspension Clause but not otherwise permitted by § 2255. And the Suspension Clause demands, at a minimum, that claims that show that the government or a branch of it has acted in excess of its constitutional powers be cognizable under habeas. So the separation-of-powers doctrine and the closely related principle of limited government powers act as the twin Rosetta Stones we must use to *1135 reveal the claims under § 2255(e) for which § 2255 can be constitutionally deficient — or “ineffective” — under the Suspension Clause, to test the legality of detention.
When we view potential habeas-corpus claims through the prism of the doctrine of separation of powers and the principle of limited government powers, we can see that the Suspension Clause demands consideration of those claims that challenge the power of the government to impose detention, whether because the imprisoning branch has exceeded its constitutionally authorized powers or because the government as a whole lacks the constitutional powers to detain under the circumstances. So when § 2255(e) speaks of § 2255’s “ineffective[ness] to test,” it necessarily is concerned with the constitutional deficiency that can exist under the Suspension Clause when a prisoner seeks to test the authorization of the government, under the separation of powers and the principle of limited government powers, to impose detention, and § 2255 does not allow that claim to proceed.
In the context of the Judiciary, under the separation of powers and the principle of limited government powers, we may not sentence someone for a “crime” that no eongressionally enacted statute actually criminalizes (or validly criminalizes), nor may we sentence a person to more timé in prison than Congress has validly authorized. See United States v. Lanier, 520 U.S. 259, 267 n.6, 117 S.Ct. 1219, 137 L.Ed.2d 432 (1997) (“Federal crimes are defined by Congress, not the courts.”); United States v. DiFrancesco, 449 U.S. 117, 139, 101 S.Ct. 426, 66 L.Ed.2d 328 (1980) (“[A] defendant may not receive a greater sentence than the legislature has authorized.”). Congress — not the Judiciary — has the power to define crimes and their respective punishments. See United States v. Kebodeaux, - U.S. -, 133 S.Ct. 2496, 2503, 186 L.Ed.2d 540 (2013). So, as relevant in MeCarthan’s case, the “ineffective to test” filter permits consideration of those claims that challenge a sentence imposed beyond the Judiciary’s constitutionally authorized powers. But, as we next discuss, it does so only when the prisoner has not previously had a “meaningful opportunity” to have his claim considered.

ii. The Suspension Clause entitles a prisoner to a “meaningful opportunity” to have his claim considered.

In addition to protecting, at a minimum, habeas claims challenging imprisonment in excess of the government’s powers and the separation of powers, the Suspension Clause imposes another requirement: a prisoner must have a “meaningful opportunity” to present his claim. As the Supreme Court has explained, “We ... consider it uncontroversial ... that the privilege of habeas corpus entitles the prisoner to a meaningful opportunity to demonstrate that he is' being held pursuant to ‘the erroneous application or interpretation’ of relevant law.” Boumediene, 553 U.S. at 779, 128 S.Ct. 2229 (emphasis added) (quoting St. Cyr, 533 U.S. at 302, 121 S.Ct. 2271).
And because the Suspension Clause requires the availability of habeas corpus for cases of detention resulting from a branch’s overreaching its powers, § 2255 is a constitutionally deficient substitute for habeas corpus — and is therefore “ineffective to test the legality of ... detention” — if it does not provide a “meaningful opportunity” for a prisoner to “test” the authorization of the government, under the separation of powers and the principle of limited government powers, to imprison him.
As Supreme Court precedent shows, a remedy does not provide a prisoner with *1136 a “meaningful opportunity” and is therefore constitutionally deficient if it does not allow a prisoner to present a collateral challenge at a meaningful time. That is precisely the case under § 2255 (without reference to the saving clause) when a prisoner tries to present a second or successive claim based on a retroactively applicable new rule of statutory law.
When we’re talking about the Suspension Clause, timing matters. As the Supreme Court’s collateral-review retro-activity jurisprudence emphatically demonstrates, the timing of a remedy’s availability can be the difference between constitutional deficiency and constitutional sufficiency. Indeed, the very existence of retroactivity doctrine itself is a shrine to the concept that a prisoner must be able to present his Suspension-Clause-required claim at a meaningful time.
When a new rule is retroactively applicable, a prisoner may make a new claim based upon it even if he raised the same issue on direct appeal and lost and his conviction became final before the Supreme Court announced the new rule. If timing were irrelevant to habeas-corpus jurisprudence, the Supreme Court would have had no reason to develop retroactivity analysis. As long as nothing prevented a petitioner from having raised an issue at trial or in his direct appeal, that would have been enough to satisfy habeas corpus concerns that a litigant have had a meaningful opportunity to present his argument — even if, after the prisoner’s conviction became final, the Supreme' Court determined a new substantive rule that, had it been issued earlier, would have required granting the prisoner’s challenge. On collateral review, then, we would hear only claims based on arguments that, by their nature, generally could not have been raised on direct review — arguments like ineffective assistance of counsel, see Kimmelman v. Morrison, 477 U.S. 365, 106 S.Ct. 2574, 91 L.Ed.2d 305 (1986), and discovery of new, previously unavailable evidence showing actual innocence.
But that’s not how collateral review works.
Instead, the Supreme Court has spent considerable time and effort developing the retroactivity framework. See, e.g., Mackey v. United States, 401 U.S. 667, 675-702, 91 S.Ct. 1160, 28 L.Ed.2d 404 (1971) (Harlan, J., concurring); Teague v. Lane, 489 U.S. 288, 299-316, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989) (plurality opinion); Bousley, 523 U.S. at 616-24, 118 S.Ct. 1604; Welch, 136 S.Ct. at 1260-68. It has done this because “the ‘retroactivity’ of a new constitutional rule [is] a function of the scope and purposes of the habeas corpus writ.” Mackey, 401 U.S. at 684, 91 S.Ct. 1160 (Harlan, J., concurring). In other words, retroactivity exists because ha-beas corpus and thus the Suspension Clause constitutionally require it.
Under the retroactivity framework, a prisoner may obtain relief on collateral review of a new claim raising an issue that was denied' on direct review, where the Supreme Court has announced a new rule of substantive law after the prisoner’s conviction became final.[14] Bousley, 523 U.S. at *1137 620-21, 118 S.Ct. 1604; Welch, 136 S.Ct. at 1264-67.
And what does the Supreme Court use to determine whether a new rule qualifies as a new rule of substantive law? Our old friends the separation-of-powers doctrine and the principle of limited government powers, of course, since retroactivity doctrine is a constitutionally required aspect of habeas corpus, and habeas corpus, in turn, is grounded in the separation-of-powers doctrine and the principle of limited government powers. So as Supreme Court precedent convincingly demonstrates, the concern for keeping government powers in constitutional check drives the determination of whether a new rule qualifies as substantive, just as it does the jurisprudence of habeas corpus as a whole.
Indeed, Justice Harlan’s Mackey concurrence defines substantive rules that warrant retroactivity as “those that place, as a matter of constitutional interpretation, certain kinds of primary, private individual conduct beyond the power of the criminal law-making authority to proscribe,” 401 U.S. at 692, 91 S.Ct. 1160 (Harlan, J„ concurring) — meaning rules that show that Congress has enacted legislation beyond its constitutionally authorized powers, in violation of the principle of limited government powers.
Nor has the Supreme Court limited the availability of retroactivity to claims involving only Congress’s overstepping of its constitutional powers. In Bousley, the Supreme Court reasoned that the separation-of-powers doctrine rendered substantive— and thus retroactive — the new rule that it had announced in Bailey v. United States, 516 U.S. 137, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995) — a case involving the Judiciary’s overreaching of its constitutional powers. Bousley, 523 U.S. at 616-24, 118 S.Ct. 1604.
In Bailey, the Supreme Court construed 18 U.S.C. § 924(c)(1), which, at the time, imposed a prison term upon a person who “during and in relation to any .... drug trafficking crime ... uses or carries a firearm,” to require evidence that the defendant actively employed the firearm during and in relation to the predicate crime. Bailey, 516 U.S. at 142-43, 116 S.Ct. 501. Previously, some courts had interpreted the provision to require evidence of only accessibility and proximity of a firearm during a drug-trafficking crime, not of active employment. Based on Bailey’s reading of § 924(c)(1), the Supreme Court concluded, courts exceeded their powers if they sentenced prisoners for an act that Congress did not make a crime under § 924(c)(1). As a result, the Supreme Court determined in Bousley that the Bailey rule had to be retroactively available.
In reaching this conclusion, the Supreme Court emphasized the important role that the separation-of-powers doctrine plays in habeas — and therefore retroactivity — analysis: “[Ujnder our federal system it is only Congress, and' not the courts, which can make conduct criminal.... Accordingly, it would be inconsistent with the doctrinal underpinnings of habeas review to preclude petitioner from relying on our decision in Bailey in support of his claim that his guilty plea was constitutionally invalid.” Bousley, 523 U.S. at 620-21, 118 S.Ct. 1604 (citations omitted) (emphasis added). In other words, the separation-of-powers doctrine — and thus habeas corpus and the Suspension Clause — constitutionally requires new substantive rules, including those like the Bailey rule, which are statutory in nature, to be retroactively applicable and available to prisoners on collateral review.
And just last year, in Welch, the Supreme Court found that the separation of powers mandated the conclusion that the *1138 rule established in Johnson v. United States, - U.S. -, 135 S.Ct. 2551, 192 L.Ed.2d 569 (2015), is retroactive.[15] To explain why, the Supreme Court hearkened back to its separation-of-powers reasoning in Bousley, observing that the separation-of-powers doctrine precludes a court from sentencing a person to more time in prison than Congress authorized, in the same way that it does not allow a court to imprison a person for an act that Congress did not validly criminalize:
Bousley noted that the separation of powers prohibits a court from imposing criminal punishment beyond what Congress meant to enact.... But a court likewise is prohibited from imposing criminal punishment beyond what Congress in fact has enacted by a valid law. In either case a court lacks the power to exact a penalty that has not been authorized by any valid criminal statute.
Welch, 136 S.Ct. at 1268 (citation omitted).
The Supreme Court’s pronouncements in Bousley and Welch illustrate Justice Harlan’s observation 45 years ago that the “relevant frame of reference [for determining whether a new rule is retroactively applicable to cases on collateral review] ... is not the purpose of the new rule whose benefit the petitioner seeks, but instead the purposes for which the writ of habeas corpus is made available.” Mackey, 401 U.S. at 682, 91 S.Ct. 1160 (Harlan, J., concurring). And we already know that the essential purpose of habeas corpus is to keep the government in check by zealously guarding the separation of powers and the principle of limited government. So it makes perfect sense that these same doctrines play a vital role in determining the retroactivity on collateral review of new rules of law.
True, the Supreme Court has also accounted for finality interests in criminal cases in its retroactivity framework. But the Supreme Court does not consider finality interests in a Vacuum. Rather, the Court’s retroactivity analysis “creates a balance between, first, the need for finality in criminal cases, and second, the countervailing imperative to ensure that criminal punishment is imposed only when authorized by law,” Welch, 136 S.Ct. at 1266—meaning only as permitted by the separation of powers and the principle of limited government powers.
Indeed, new substantive rules are retroactive for the very reason that “where the conviction or sentence in fact is not authorized by’ substantive law, ...' finality interests are at their weakest. As Justice Harlan explained, ‘[t]here is little societal interest in permitting the criminal process to rest at a point where it ought properly never to repose.’” Id. (quoting Mackey, 401 U.S. at 693, 91 S.Ct. 1160 (Harlan, J., concurring)) (emphasis added).
Notably, Welch and Justice Harlan did not distinguish between illegal convictions and illegal sentences, emphasizing that in both cases, “finality interests are at their weakest.” Id. So while I agree with Judge Jordan that equity “does not always draw clean lines, and the finality concerns embodied in § 2255(h) cannot be ignored,” Jordan Op. at 1107-08, if, as Judge Jordan opines (and I agree), finality interests do not outweigh the interests in imposing punishment for a conviction when that conviction is not authorized by law, they are equally insufficient to outweigh the interests in imposing a sentence when that sentence is not authorized by law because *1139 it exceeds a congressionally imposed statutory maximum.
All of this — that is, the existence of ret-roactivity analysis — shows that, for purposes of understanding the meaning of “ineffective,” timing is everything when it comes to having a “meaningful opportunity” — an opportunity that is not constitutionally deficient — to present claims that are ultimately governed by new rules of substantive law.
And as Bousley, which involved a new rule of statutory law, and Welch, which concerned a new rule of constitutional law, show, the separation-of-powers and limited-government-powers concerns are exactly the same for both retroactively applicable new rules of statutory law and retroactively applicable new rules of constitutional law. Compare Bousley, 523 U.S. at 620-21, 118 S.Ct. 1604 (statutory rule), with Welch, 136 S.Ct. at 1268 (constitutional rule). For this reason, new statutory and constitutional rules must be retroactively applicable on collateral review to the same extent. In both cases', a branch of the government has exceeded its constitutional powers. So on initial collateral review, a petitioner may make a claim based on the Supreme Court’s new rule that did not exist during the petitioner’s direct appeal, even though the petitioner had the opportunity to raise the same issue on direct appeal.
That’s because not just any opportunity to raise an issue will do under habeas corpus jurisprudence; to comport with constitutional requirements, the opportunity to raise an issue must be meaningful. And an opportunity on direct review is not meaningful if a claim is denied and a new retroactively applicable rule subsequently establishes that the right not to be detained under the challenged provision in violation of the separation of powers or the principle of limited government always existed — regardless of whether that new rule is statutory or constitutional in nature.
Nor has the Supreme Court suggested that a different standard of retroactivity applies for second or successive claims than for initial claims on collateral review. Why would it? As we have discussed, the separation-of-powers doctrine and the principle of limited government powers are the animating reasons for why a new rule of substantive law must be retroactively applicable on collateral review. A sentence imposed in excess of the court’s constitutional authority violates the separation of powers just as much if it is raised in a second or successive claim as it does if it is raised in an initial claim.
And an opportunity is not a meaningful one on an initial claim any more than it is on direct review if the initial claim is denied and a new retroactively applicable rule subsequently establishes that the right not to be detained under the detaining mechanism at issue in the case, in violation of the separation of powers and the principle of limited government powers, has always existed. Cf. 28 U.S.C. § 2255(h)(2) (permitting consideration of second or successive claims based on a retroactively applicable new rule of constitutional law). Because the Suspension Clause preserves habeas to protect against government action in excess of constitutional powers, the Suspension Clause requires consideration of second or successive claims that rely on a new retroactively applicable rule of law that was not available during direct appeal or earlier collateral proceedings.[16] For it is here, “where the conviction or sentence in fact is not *1140 authorized by substantive law,” that “finality interests are at their weakest.” Welch, 136 S.Ct. at 1266.
Of course, that is not to say that no finality interests are at play here, for limitations can and do exist on the habeas-corpus right to bring a claim based on a retroactively applicable new rule of substantive law. Habeas corpus entitles a petitioner to one meaningful opportunity to present his claim. So if, for example, a prisoner presents a claim based on a new retroactively applicable rule of law and loses, his habeas-corpus rights have been satisfied, and he may not continue to file new petitions raising the same claim, see 28 U.S.C. § 2244(a), without the Supreme Court’s having issued an intervening new retroactively applicable rule.

C. Section 2255 does not otherwise permit consideration of second or successive claims based on a new rule of statutory law that reveals a violation of the separation of powers, so such claims must be cognizable under § 2255(e).

Now that we have established that habe-as corpus requires consideration of a. petitioner’s claim based on a retroactively applicable new rule of substantive law— whether constitutional or statutory in nature and whether raised as an initial or second or successive collateral claim — we review whether § 2255, in fact, allows for consideration of such claims. Clearly, it does for claims based on retroactively applicable new constitutional rules. See 28 U.S.C. § 2255(h)(2). The express language of subsection (h)(2) provides that “[a] second or successive motion must be certified as provided in section 2244 by a panel of the appropriate court of appeals to contain — (2) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailablé.”
But nothing in § 2255 expressly allows consideration of second or successive claims raising a retroactively applicable new rule of statutory law. On the contrary, 28 U.S.C. § 2255(h), in conjunction with the provisions of § 2244 that it incorporates by reference, precludes consideration of claims relying on a retroactively applicable new rule of statutory law. Because the Suspension Clause requires consideration of these claims and yet § 2255 otherwise does not allow them, § 2255(e) must permit a prisoner to bring such claims in an application for writ of habeas corpus.[17] And since McCarthan seeks to rely on a new retroactively applicable rule of statutory law that was not available when he *1141 filed his initial § 2255 petition, § 2255(e) authorizes consideration of his claim.[18]
Because the district court did not consider McCarthan’s claim on the merits in the first instance, I would reverse the district court’s dismissal of McCarthan’s claim and remand for consideration of the merits.
II.
The Majority’s criticism of my proposed interpretation of the saving clause focuses on three things: (1) my reliance on Boumediene, 553 U.S. 723, 128 S.Ct. 2229; (2) my conclusion that retroactivity doctrine is constitutionally required; and (3) the alleged mooting of my theory by Felker v. Turpin, 518 U.S. 651, 116 S.Ct. 2333, 135 L.Ed.2d 827 (1996). The Majority is mistaken on all three counts.
A. The Majority’s attack on my reliance on Boumediene does not withstand scrutiny.
The Majority takes issue with my reliance on Boumediene because that case “addressed the scope of habeas corpus for executive detainees ‘where no trial has been held’ and distinguished decisions like Felker, in which a prisoner sought relief from a judgment imposed in a ‘fair, adversary proceeding.’ ” Maj. Op. at 1094-95 (quoting Boumediene, 553 U.S. at 732, 774, 782, 128 S.Ct. 2229). On its face, this might seem like a good way of distinguishing Boumediene — until we look at how this dissent actually uses Boumediene.
First, I rely on Boumediene primarily for citation of principles universally applicable to habeas corpus and the Suspension Clause — regardless of the posture of the litigating prisoner. For example, I cite Boumediene for its interpretation of Swain and Hayman as standing for the proposition that failure to interpret the saving clause as a constitutional failsafe would raise “serious question[s] about the constitutionality of [§ 2255].” Swain and Hayman involved prisoners who had already gone through a presumably “fair, adversary proceeding” and had been sen *1142 tenced, and the fact that Boumediene involved Guantanamo prisoners instead of sentenced federal prisoners does not somehow render the lessons of Swain and Hay-man any less correct or applicable.
Similarly, to the extent that the Majority’s criticism of my reliance on Boume-diene is intended to apply to my citations of Boumediene for the principle that concerns of separation of powers and limited government powers animate habeas corpus, and therefore the Suspension Clause, the Majority likewise provides no explanation why the fact that Boumediene involved Guantanamo prisoners somehow makes that general principle less applicable in the case of sentenced federal prisoners. After all, there is only one Suspension Clause, and it applies to executive-branch prisoners and federally sentenced prisoners alike.

B. The Majority mistakenly views retro-activity doctrine as an exception to procedural barriers.

And even if we did not consider Boume-diene, the Majority’s criticism does not properly account for Supreme Court jurisprudence on retroactivity — an area that directly involves and applies to sentenced federal prisoners. As I have noted, the Supreme Court in retroactivity doctrine has relied on the very same separation-of-powers and limited-government-powers concerns as it has in explaining in Boumediene the driving forces behind habeas and the Suspension Clause. See supra at 1137-38 (“[U]nder our federal system it is only Congress, and not the courts, which can make conduct criminal.... Accordingly, it would be inconsistent with the doctrinal underpinnings of habeas review to preclude petitioner from relying on our decision in Bailey in support of his claim that his guilty plea was constitutionally invalid.” (quoting Bousley, 523 U.S. at 620-21, 118 S.Ct. 1604 (citations and quotation marks omitted) (emphasis added))); see id. at 145, 116 S.Ct. 501 (“Bousley noted that the separation of powers prohibits a court from imposing criminal punishment beyond what Congress meant to enact.... But a court likewise is prohibited from imposing criminal punishment beyond what Congress in fact has enacted by a valid law. In either case a court lacks the power to exact a penalty that has not been authorized by any valid criminal statute.” (quoting Welch, 136 S.Ct. at 1268 (citation and quotation marks omitted))).
That is no accident. Retroactivity doctrine is based on “the doctrinal underpinnings of habeas review,” Bousley, 523 U.S. at 621, 118 S.Ct. 1604 — meaning the Suspension Clause’s concerns for separation of powers and the principle of limited government powers — because it is required by “the doctrinal underpinnings of habeas review” and therefore by the Suspension Clause. This fact seems to escape the Majority, so it incorrectly suggests that Congress could do away altogether with collateral review of claims that rely on retroactively applicable rules if it so desired. See Maj. Op. at 1095 (“Retroac-tivity means that a court is no longer barred from applying a new rule on collateral review, not that a court must create a vehicle for collateral review because there is a new rule.”). But that is not an option because the “doctrinal underpinnings of habeas review” — and therefore the Suspension Clause — constitutionally require retroactivity doctrine and therefore a procedural vehicle for collateral review of claims that rely on retroactively applicable new rules.
So even without considering Boume-diene, the Suspension Clause requires consideration of second or successive claims that involve retroactively applicable new rules of statutory law because they expose *1143 detention in violation of the “doctrinal underpinnings of habeas review” — that is, detention in violation of the separation of powers and the principle of limited government powers.
The Majority has no sufficient answer to this. Instead, it responds by confusing two distinct concepts: retroactivity doctrine and procedural barriers. See id. First, the Majority states, “When the Supreme Court makes a right retroactively available on collateral review, it does not mean that a prisoner is constitutionally entitled to have a court review a violation of that right on the merits.” Id. I agree. But a prisoner is constitutionally entitled to a meaningful opportunity to have a court review a violation of that right on the merits.
The Majority does not appreciate the difference between a meaningful opportunity to have a claim heard and an unqualified constitutional right to have a claim heard, regardless of the prior availability of meaningful opportunities to have done so. So it next invokes the existence of procedural barriers such as the procedural-default rule and the statute of limitations as evidence supporting its incorrect premise. Id.
To be sure, procedural barriers like procedural default and the statute of limitations may constitutionally preclude a prisoner from bringing his claim on a new retroactively applicable rule. But that has nothing to do with why retroactivity doctrine is or is not constitutionally required. Nor does it have anything to do with whether a prisoner has a meaningful opportunity to bring his claim if he procedurally defaults it or files it after the statute of limitations has expired.
Procedural barriers like procedural default and the statute of limitations can constitutionally limit access to collateral review through retroactivity doctrine because even when they act to bar a claim, they do not bar a meaningful opportunity to present the claim. In other words, it is possible to obtain collateral review, so long as the petitioner complies with these procedural rules.
But that is not the case with a second or successive claim that rests on a new retroactively applicable rule of statutory law. At every stage of the proceedings through initial collateral review, a petitioner may raise the argument on which the new rule is based (thereby not procedurally defaulting) and may file a second or successive claim within a year of the Supreme Court’s announcement of a retroactively applicable new rule of statutory law. But in the absence of the saving clause, § 2255 provides no opportunity to present the claim if the Supreme Court does not recognize, until after the initial collateral claim has been disposed of, that the right has always existed. And since the doctrinal underpinnings of habeas constitutionally require one meaningful opportunity to present a claim based on a retroactively applicable rule of statutory law, the Majority’s construction of § 2255 not to provide such an opportunity amounts to a suspension of the writ.
C. Felker does not solve the Majority’s problem.
In response to this problem, the Majority invokes Felker. Maj. Op/ at 1095. The Majority reasons that its own “interpretation of the saving clause cannot suspend the writ because the Original Writ in the Supreme Court remains available, habeas corpus at common law did not apply to prisoners sentenced by a court of competent jurisdiction, and the decision of the Supreme Court in Felker ... upheld a bar on successive motions against constitutional challenge.” Maj. Op. at 1093-94. None of these arguments saves the Majority’s in *1144 terpretation of the saving clause from constitutional peril.
Beginning with the Majority’s third argument first, the Majority asserts that the Supreme Court’s opinion in Felker supports the conclusion that the limitations that § 2255(h) places on second or successive claims are absolute and constitutional. This argument is based on the premise that Felker held that the second or successive restrictions for state prisoners seeking federal habeas relief, codified at 28 U.S.C. § 2244(b),[19] do not violate the Suspension Clause. See Felker, 518 U.S. at 664, 116 S.Ct. 2333. Because those restrictions are significantly similar to the second or successive restrictions in § 2255(h), and because the limitations on successive state petitions do not contain a saving clause, like § 2255 does, the argument goes, the § 2255(h) restrictions must be constitutional if the § 2244(b) restrictions are constitutional. See Maj. Op. at 1095.
The logic is superficially appealing, but it fails to take into account a fundamental difference between federal prisoners’ collateral claims and state prisoners’ habeas claims: separation-of-powers and limited-government-powers concerns can constitutionally require habeas relief for federal prisoners, while these doctrines are irrelevant to determining the availability of ha-beas relief for state prisoners. Federal courts adjudicating federal prisoners’ claims like McCarthan’s enforce federal separation-of-powers values by correcting convictions or sentences where an Article III court exceeded its congressionally authorized powers.
That aspect of a federal collateral proceeding like McCarthan’s is not present in a federal-court adjudication of a state prisoner’s habeas petition. A state court cannot act in violation of the federal separation of powers because the state court is not a part of the federal Judiciary. So not surprisingly, § 2254 does not contain a saving clause, since unlike with habeas review of federal cases, habeas review of state cases does not raise separation-of-powers or limited-government-powers concerns. As a result, the Court in Felker had no reason to and did not consider the separation of powers in its analysis because it was irrelevant in that case. Here, in contrast, the separation-of-powers doctrine drives the analysis of the saving clause’s meaning.
The Majority responds to this important difference between federal and state habe-as by calling it “ ‘interpretive jiggery-pokery’ ” and suggesting that I “ignore[ ]” the fact that the principle of limited government powers also animates habeas corpus. Maj. Op. at 1095 (quoting King v. Burwell, - U.S. -, 135 S.Ct. 2480, 2500, 192 *1145 L.Ed.2d 483 (2015) (Scalia, J., dissenting)). Setting aside the irony in the Majority’s charge, the Majority misses the point: the principle of limited government powers in the context of habeas is the principle that the federal government may not exceed the powers granted to it by the Constitution. Neither this concept nor the separation-of-powers doctrine is in play when a federal court grants a state prisoner’s ha-beas petition. In that context, the state’s adjudication of a claim yields to federal interpretation of the governing law under principles of federalism and the supremacy of federal law — concepts distinct from the separation-of-powers doctrine and the principle of limited government that drive habeas for federal prisoners.
The Majority also suggests that we need not consider the Suspension Clause in interpreting the saving clause because a would-be petitioner like McCarthan has an alternate route for obtaining the relief he seeks: he may petition for an “Original Writ” from the Supreme Court. In support, the Majority cites Judge Pryor’s concurrence in Samak, which, in turn, cites Felker. See Maj. Op. at 1094.
But a careful reading of Felker dispels this notion that the existence of the Original Writ allows Congress to preclude relief for second or successive claims required under the Suspension Clause to be permitted. To be sure, Felker relied on the availability of the Supreme Court’s original jurisdiction to strike down a challenge to § 2244(b) under the Exceptions Clause.[20] Notably, though, it chose not to rely on the availability of the Court’s original jurisdiction to strike down a challenge to § 2244(b) under the Suspension Clause.
In Felker, the Court held that § 2244(b)’s stripping of the Supreme Court’s appellate jurisdiction to review a court of appeals’s denial of a state prisoner’s motion for leave to file a second habe-as petition in the district court did not affect the Supreme Court’s original jurisdiction to entertain original habeas petitions. See Felker, 518 U.S. at 658-61, 116 S.Ct. 2333. This conclusion consequently “obviate[d]” the need to address the constitutionality of Congress’s jurisdiction-stripping under the Exceptions Clause; since the Supreme Court retained its jurisdiction to entertain an original petition, the Court reasoned, “no plausible argument” could exist that § 2244(b) violated the Exceptions Clause. Id. at 661-62, 116 S.Ct. 2333.
Then the Court turned for the first time to the challenge to § 2244(b) under the Suspension Clause. Significantly, the Court did not rule that-those restrictions did not violate the Suspension Clause because the “Original Writ” was still available in the Supreme Court for any of the number of claims precluded by the seeond-or-succes-sive bar. In fact, the Court in its analysis of the Suspension Clause issue did not even consider the Supreme Court’s original jurisdiction to hear habeas petitions. Instead, the Court held that the § 2244(b) restrictions passed muster under the Suspension Clause because they substantially mirrored common-law habeas rules. See id. at 664, 116 S.Ct. 2333. Felker thus requires us to ask not whether the narrowest avenue for relief, such as the Original Writ, still exists, but rather whether the statutory provision at issue adequately substitutes for common-law habeas rules.
*1146 When it comes to second or successive claims based on retroactively applicable new rules of statutory law, the availability of the Original Writ does not adequately substitute for common-law habeas rules for three reasons.
First, it is not even clear that the Supreme Court would have original jurisdiction to entertain a claim that is expressly precluded by § 2255(h). If, as the Majority and Chief Judge Carnes’s concurrence have effectively argued, see Maj. Op. at 1093-94; E. Carnes Op. at 1100,- only a prisoner whose second or successive claim complies with § 2255(h)’s bars is “authorized” to proceed under § 2255 and therefore under the saving clause, § 2255(h)’s bars would then also arguably restrict the Supreme Court. Cf. Felker, 518 U.S. at 662-63, 116 S.Ct. 2333 (pondering the applicability of §§ 2244(b)(1) and (2)’s unqualified restrictions on the filing of second or successive state habeas claims, to the Supreme Court’s review).
Second, even if subsection (h)’s bars do not apply to the Supreme Court, the Original Writ does not provide a federal prisoner with a “meaningful opportunity” to test the legality of his detention — despite the fact that common-law habeas rules demand such a meaningful opportunity. Under Supreme Court Rule 20.4(a), the writ is “rarely granted” and only when “exceptional circumstances warrant the exercise of the Court’s discretionary powers.” So consideration of claims based on a retroactively applicable new rule of statutory law would not occur as a matter of course. As a result, while the Supreme Court’s original jurisdiction might provide an opportunity, it would not be a meaningful one.
That leads to the third point. Even if the Supreme Court had upheld § 2244(b) against the Suspension Clause challenge on the basis of the availability of the Original Writ — which it did not — the procedure at issue in Felker was materially different — and far more conducive to Original Writ review — than that at issue under the saving clause. In Felker, the Court relied on its original jurisdiction to safeguard against individual incorrect decisions that an appellate court might make in denying the availability of habeas relief on the merits of a given case. We would hope these cases would be relatively few, but in any event, the § 2244(b) procedure does not on its face deny relief to an entire class of prisoners who we know are entitled to relief.
That, however, would not be the situation if prisoners with second or successive claims based on retroactively applicable new rules of statutory law all had to use the Original Writ to obtain relief to which the Suspension Clause entitles them. Then the Original Writ would have to serve as a .regular mechanism for an entire class of prisoners — not just an individual prisoner here or there who was mistakenly denied the opportunity for habeas relief by an appellate court — to obtain relief. Imagine, for example, the Supreme Court’s having to entertain in the first instance all second or successive claims based on a retroactively applicable new rule of statutory law! That cannot be what is contemplated by the Court’s “rare[ ]” and “exceptional” use of its Original Writ jurisdiction. See Felker, 518 U.S. at 665, 116 S.Ct. 2333 (quoting Sup. Ct. R. 20.4(a)).
Nor does the Majority’s reliance on Article III, § 1, of the Constitution adequately address the problem. See Maj. Op. at 1094. Invoking this constitutional provision, the Majority reasons that under its interpretation of the saving clause, the existence of the Original Writ must suffice to maintain the constitutionality of § 2255 under the Suspension Clause “because the Constitution does not even require Congress to create inferior courts.” Id. In other words, *1147 in the Majority’s view, Congress could enact legislation that completely abolished habeas corpus, as long as it preserved the Original Writ.
I respectfully disagree. Such a system would be entirely unworkable in today’s world. Even setting aside the fact that abolition of habeas-corpus review outside the Supreme Court would require more than “exceptional” or “rare” review by Original Writ, it is difficult to conceive of how the nine Justices would be able to timely process in the first and last instance all habeas petitions from around the country, in addition to maintaining the rest of their important workload. And a system that systematically deprives prisoners of timely habeas review is a system that provides no meaningful habeas review. Unquestionably, the lack of a meaningful habeas review system would violate the Suspension Clause.
So putting the Majority’s argument in the best light, the question is one of degree. I respectfully submit that using the Original Writ as a regular and only processing mechanism for an entire class of second or successive claims that are constitutionally required to be considered amounts to not providing a meaningful ha-beas-review system for those claims. It bears repeating that the claims we are talking about are required by the Suspension Clause to receive consideration.
As for the Majority’s argument that ha-beas corpus at common law did not apply to prisoners sentenced by a court of competent jurisdiction, Maj. Op. at 1094-95, the Supreme Court itself has noted that “Felker, Swain, and Hayman stand for the proposition that the Suspension Clause does not resist innovation in the field of habeas corpus.” Boumediene, 553 U.S. at 795, 128 S.Ct. 2229. As the Court has further explained, “[hjabeas is not a static,, narrow, formalistic remedy; its scope has grown to achieve its grand purpose.” Id. at 780, 128 S.Ct. 2229 (quoting Jones, 371 U.S. at 243, 83 S.Ct. 373 (internal quotation marks omitted)). And since retroactivity doctrine is constitutionally required under current habeas and Suspension Clause jurisprudence, the Majority’s argument in this regard cannot provide a basis for denying a meaningful opportunity for collateral review to prisoners whose second or successive claims rest on a new, retroactively applicable rule of substantive law.
III.
Turning now to the Majority’s interpretation of the saving clause, it suffers from three fatal flaws. First, it defies the statutory text it purports to respect. Second, it shortchanges Supreme Court jurisprudence on the Suspension Clause and habe-as corpus. And third, it inexplicably limits the meanings of the general definitions it cites to shoehorn them into supporting the Majority’s incorrect construction of the saving clause.

A. The Majority’s interpretation of the saving clause contradicts the text of § 2255.

Though I do not question my colleagues’ earnestness in their proposed construction of the saving clause, the Majority opinion’s approach to deciphering the text of § 2255, disappointingly, is like something right out of Alice’s Adventures in Wonderland.[21] True, the Majority opinion repeatedly claims that its analysis does nothing more than apply the plain meaning of § 2255’s text. See, e.g., Maj. Op. at 1080, 1082, *1148 1084-93, 1095-97, 1099. But saying so — no matter how many times — doesn’t make it so. In fact, the Majority opinion’s interpretation of the statutory text clashes in significant ways with what the text actually says.
For starters, the Majority opinion seems most confused when it asserts that exeeution-of-sentence claims may be brought under the saving clause. In support of its theory, the Majority opinion reasons that § 2255 is “ ‘inadequate or ineffective to test’ a prisoner’s claim about the execution of his sentence because that claim is not cognizable under section 2255(a).” Maj. Op. at 1088 (emphasis in original deleted; emphasis added).
But that’s exactly why execution-of-sentence claims cannot be brought under the saving clause — because those claims are not cognizable under § 2255. Proceeding on a type of claim that § 2255 actually authorizes is an absolute prerequisite for a habeas petition to be considered under the saving clause. See supra at 1124-29; see also 28 U.S.C. § 2255(e) (the habeas petition of a prisoner “authorized to apply for relief by [§ 2255] motion ... shall not be entertained ... unless it also appears that the remedy by [§ 2255] motion is inadequate or ineffective to test the legality of his detention”) (emphasis added). The universe of claims that § 2255 “authorized,” however, does not include execution-of-sentence claims — even by the Majority’s admission. Nor would it make sense for execution-of-sentence claims to be considered under the saving clause because they are authorized under § 2241, without regard to § 2255. See Antonelli, 542 F.3d at 1352.
So bringing an execution-of-sentence claim under § 2255’s saving clause would be a lot like putting scuba gear on a swordfish so it could breathe underwater; neither the saving clause nor scuba gear is designed, is necessary, or works for the asserted purpose (or, as the Mock Turtle in Wonderland might say, “for the asserted porpoise”). See Carroll, supra, at 154-55.
The Majority responds to this problem by saying that the defect in its theory “proves nothing about whether a prisoner with a claim based on a change in caselaw or a prisoner with a claim based on actual innocence satisfies the saving clause.” Maj. Op. at 1093-94. True. It doesn’t.
But it’s not intended to. The first section of this dissent already explains why a claim based on a new retroactively applicable rule of statutory interpretation — not just any “change in caselaw,” as the Majority incorrectly characterizes my dissent as arguing — must be considered under the saving clause. I write about the incorrectness of the Majority’s argument solely in an effort to prevent our Circuit from supplanting eighteen years of precedent with another interpretation of the law that cannot possibly be correct. After all, “if you drink ... from a bottle marked ‘poison,’ it is almost certain to disagree with you, sooner or later.” Carroll, supra, at 10.
The Majority’s textual confusion does not end with its incorrect insistence that execution-of-sentence claims may be brought under the saving clause. Rather, the Majority’s interpretation just gets “[c]uriouser and curiouser!” Carroll, supra, at 15. The Majority also asserts that prisoners “ ‘[kept] in custody’ without a criminal sentence” may have their claims heard through the saving clause. Maj. Op. at 1089.
But that is precisely the opposite of what the saving clause’s unambiguous language permits. Only prisoners who have already been sentenced by a federal court are eligible to take advantage of the saving clause — and only they need to do so to *1149 access habeas relief because prisoners who have not yet been sentenced are not subject to § 2255’s strictures and may proceed directly under § 2241. See supra at 1124-29. That’s because the saving clause allows consideration of claims presented by only those prisoners “authorized to apply for relief by [§ 2255] motion.” 28 U.S.C. § 2255(e). Section 2255, in turn, authorizes the claims of only those prisoners “under sentence of a court established by Act of Congress.” Id. § 2255(a) (emphasis added).
Not only that, but § 2255 authorizes solely those claims challenging sentences. See id. Only in Wonderland would it make sense for an unsentenced prisoner to bring a claim challenging his sentence. Cf. Carroll, supra, at 187 (“Sentence first — verdict afterwards.”).
But the Majority goes even deeper down the rabbit hole, asserting next that the saving clause does not allow for consideration of second or successive claims that do not satisfy the requirements of subsection (h)’s bar on second or successive § 2255 motions. See Maj. Op. at 1089-91; see also E. Carnes Op. at 1100. The Majority does not look to the language of the saving clause in divining this supposed rule; instead, it relies incorrectly on the general/specific canon of construction and again does not account for the saving clause’s failsafe function or apply the actual language of § 2255.
Invoking the general/specific canon, the Majority contends, “The specific language of section 2255(h), enacted nearly 50 years after the saving clause, limits the reach of the saving clause.” Maj. Op. at 1090-91. First, this argument implicitly concedes that the language of the saving clause does not require a prisoner’s claim to satisfy subsection (h) in order for a court to consider it under the saving clause. For if it did, the Majority would not need to invoke this canon.
Second, to the extent that the general/specific canon even applies to the analysis of § 2255, in invoking the general/specific canon of construction, the Majority gets things backwards; it wrongly characterizes the saving clause as the general provision and subsection (h) as the more specific provision. The general/specific canon states that “[i]f there is a conflict between a general provision and a specific provision, the specific provision prevails.” Sealia & Garner, supra, at 188. This canon relies on the principle that “the two provisions are not in conflict, but can exist in harmony.” Id. at 185. As Justice Sealia and Bryan Garner have explained, “The specific provision does not negate the general one entirely, but only in its application to the situation that the specific provision covers.” Id.
Applying the general/specific canon can be challenging because it is not always easy to ascertain which provision lays the general rule and which the specific. Id. at 187; see also id. at 188 (quoting Radzanower v. Touche Ross & Co., 426 U.S. 148, 159, 96 S.Ct. 1989, 48 L.Ed.2d 540 (1976) (Stevens, J., dissenting)). And timing of enactment does not necessarily reveal the answer. Id. at 187. Here, the bars contained in subsection (h), though enacted later in time, establish the general rule that courts may consider only those second or successive claims that satisfy the conditions of subsection (h). The saving clause provides the exception: if failure to consider a second or successive claim that does not satisfy the criteria of subsection (h) would result in a violation of the Suspension Clause, the saving clause requires consideration of that claim.
The general and specific labels make no sense if applied in the other direction. It would be “uncommon nonsense,” Carroll, *1150 supra, at 158, indeed, to allow the unconstitutional provision (subsection (h), in the absence of subsection (e)’s failsafe mechanism) to trump the provision whose job it is to ensure subsection (h)’s and the rest of § 2255’s constitutionality. So subsection (h)’s bar cannot preclude consideration of second or successive claims that the Suspension Clause — and therefore the saving clause — requires.
Each of the three errors discussed above — the insistence that execution-of-sentence claims may be considered under the saving clause; the suggestion that un-sentenced prisoners’ claims may be considered under the saving clause; and the notion that subsection (h), which purports to bar second or successive claims that are constitutionally required to be considered, takes priority over the saving clause’s constitutional-failsafe mechanism — are examples of “needlessly rendering provisions in conflict [though] they can be interpreted harmoniously.” See Maj. Op. at 1090 (quoting Scalia & Garner, supra, at 180) (quotation marks omitted). As the Majority itself notes, though, “[t]here can be no justification” for such an analysis. Id. (quoting Scalia & Garner, supra, at 180) (quotation marks omitted).
Finally, the Majority expresses concern that construing the saving clause to allow consideration of second or successive claims that may not be entertained under subsection (h) allows saving-clause claims to avoid subsection (f)’s statute of limitations. Maj. Op. at 1091. But that is doubly wrong, even if, as the Majority suggests, subsection (f)’s statute of limitations is incorporated into subsection (e), see Maj. Op. at 1093-94 (arguing that subsections (f) and (h) “authorize” a prisoner to apply for relief under § 2255 and therefore are incorporated into the saving clause’s requirement that a prisoner be “authorized” to apply for relief under § 2255 in order to have his second or successive claim considered under the saving clause).
First, under subsection (f)(3), courts may consider claims filed within one year of “the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review.” 28 U.S.C. § 2255(f)(3). Among other functions, this provision allows courts to entertain (h)(2) claims— “containing] ... a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court that was previously unavailable,” id. § 2255(h)(2) — even if more than a year of untolled time has passed since the prisoner’s conviction became final.
If claims satisfying subsection (h)(2)’s criteria were not viewed as asserting a “right [that] has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review,” id. § 2255(f)(3), they could not be considered under § 2255’s statute of limitations if they were brought more than a year after the prisoner’s conviction became final because subsection (f)(3) would not apply to them, and subsection (f)(3) would lack a function. This interpretation would violate the surplusage canon. See Scalia & Garner, supra, at 174-79; see also Reiter v. Sonotone Corp., 442 U.S. 330, 339, 99 S.Ct. 2326, 60 L.Ed.2d 931 (1979) (“In construing a statute we are obliged to give effect, if possible, to every word Congress used.”).
But that’s not how courts apply § 2255’s statute of limitations to second or successive claims that rely on a retroactively applicable new rule of constitutional law. Necessarily then, second or successive claims that “contain ... a new rule of constitutional' law, made retroactive to cases on collateral review by the Supreme *1151 Court, that was previously unavailable,” 28 U.S.C. § 2255(h)(2), must also assert a “right [that] has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review,” id. § 2255(f)(3).
That right is the right protected by the Suspension Clause not to be detained in violation of the separation of powers or the principle of limited government powers, through the impermissible interpretation of the statute or other device used to detain the prisoner, that has since been invalidated by the Supreme Court’s retroactively applicable new rule of substantive law — whether constitutional or statutory. And since subsection (f)(3) imposes a one-year statute of limitations on all claims involving retroactively applicable rights— without respect to whether they are based on a new rule of statutory or constitutional law — if it is incorporated into subsection (e), it necessarily imposes a one-year statute of limitations on second or successive claims that raise a right that depends on a new rule of statutory law made retroactively applicable by the Supreme Court to cases on collateral review. As a matter of fact, then, accounting for the Majority’s view that subsection (e) incorporates subsection (f)’s statute of limitations, second or successive claims that depend on new retroactively applicable rules of statutory law do not evade § 225,5’s statute of limitations.[22]
Second, even if second or successive claims based on a “right [that] has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review,” id. § 2255(f)(3), do avoid the statute of limitations,[23] that is not sufficient grounds to disregard the saving clause’s constitutional-failsafe function and interpret § 2255 to prohibit claims that are constitutionally required. If Congress wants to impose a statute of limitations on saving-clause claims, nothing stops it from doing so.[24] The same is true of requiring prisoners to seek a certificate of appealability to' bring claims based on a new retroactively applicable rule of statutory law.

*1152
B. The Majority’s Interpretation of the Saving Clause Ignores Critical Supreme Court Precedent.

To support its interpretation of the saving clause, the Majority’s opinion purports to rely primarily on dictionaries, Judge William Pryor’s concurrence in Samak v. Warden, FCC Coleman-Medium, 766 F.3d 1271, 1275-95 (11th Cir. 2014) (W. Pryor, J., concurring), and the Tenth Circuit’s decision in Prost v. Anderson, 636 F.3d 578 (10th Cir. 2011) (on which Judge Pryor’s Samak concurrence, in turn, relies).
Prost, however, specifically declined to consider “whether, when, and how the application of § 2255(h)’s limits on second or successive motions might (ever) raise a serious constitutional question.”[25] Id. at 594; see also id. at 583 n.4 (acknowledging that the Suspension Clause may require “some avenue of collateral attack”). So Prost’s analysis does not account for — and does not purport to account for — the Suspension Clause and its attendant constitutional considerations. Yet Prost expressly recognized that to the extent that § 2255’s bans on second or successive motions violated the Constitution, § 2255 could not be upheld. See id. at 586 n.6 (“[Courts] [Waving created our own (if different) hierarchy of innocence claims, it’s hard to say Congress wasn’t entitled to enact its own— unless of course its particular hierarchy in some way can be said to violate the Constitution.”).
We are in a different posture than the Tenth Circuit. Today we abrogate nearly 20 years of Circuit precedent on our interpretation of the saving clause and replace it with an entirely different framework of understanding. When we undertake this type of drastic change in our jurisprudence, we have the deepest of responsibilities to try to ensure that our new solution is correct — or at least that it has accounted for constitutional concerns.
But the Majority gives short shrift to the Suspension Clause and barely mentions retroactivity doctrine or the importance in habeas jurisprudence of the separation-of-powers doctrine and the principle of limited government powers. Having a discussion about the saving clause without delving into all of these constitutional concepts is a lot like trying to play football without a ball: it can’t be done correctly.
The point of the saving clause is to save § 2255 from any potential unconstitutionality. See supra at 1132-34; see also Boumediene, 553 U.S. at 776, 128 S.Ct. 2229. If § 2255 did not permit consideration of claims that are constitutionally required, it would be unconstitutional. See supra at 1132-34. So addressing the Constitution’s — and in particular, the Suspension Clause’s — requirements is critical to the correct interpretation of the saving clause. And since the separation-of-powers doctrine and the principle of limited government powers drive the Suspension Clause’s protection of habeas claims, we must consider the role of those doctrines as well when we construe the saving clause. Finally, because these same concerns require retroactivity of new rules of both constitutional and statutory law, we must also account for retroactivity in our analysis.
But the Majority’s analysis dismisses all of these concerns without adequate reasoning. The Majority’s reliance on Felker for *1153 its Original-Writ answer to the Suspension Clause problem fails because Felker does not hold that Suspension Clause problems may be resolved by the existence of original jurisdiction. See supra at 1143-48. Nor does the Majority address the importance of the separation-of-powers doctrine and the principle of limited government powers in habeas and Suspension Clause jurisprudence. And while the Majority Opinion mentions “retroactivity,” it does not acknowledge that retroactivity exists because it is constitutionally required. The Majority likewise neglects to give any consideration to the constitutional reasons requiring retroactivity. See Maj. Op. at 1095; see supra at 1141-43.
Instead, the Majority opines that determining whether a new rule of law “applies retroactively on collateral review can be a difficult and controversial task” and then employs that opinion as a reason to support its interpretation of the saving clause because the Majority’s construction conveniently does not require courts to determine whether a new rule applies retroactively. Maj. Op. at 1098-99. But courts’ convenience cannot excuse failure to comply with constitutional requirements. And the Majority does not account for the constitutional basis for retroactivity doctrine at all in arriving at its construction of the saving clause.
Because the Majority does not adequately consider the Suspension Clause, the doctrine of separation of powers and the principle of limited government powers, and retroactivity doctrine, the Majority does not recognize that the saving clause requires consideration of second or successive claims that rely on a new retroactively applicable rule of statutory law.[26] As a result, the Majority’s interpretation of the saving clause renders § 2255 unconstitutional.

C. The Majority’s interpretation relies on artificially limited definitions, contorted to fit the Majority’s desired construction of the saving clause.

The Majority identifies and defines four terms from the saving clause: “remedy,” “to test,” “inadequate or ineffective,” and “detention.” Maj. Op. at 1085. None of these terms requires the construction that the Majority devises today. And none precludes the interpretation of the saving clause to permit second or successive claims based on a retroactively applicable new rule of statutory law.
The Majority begins by defining “remedy” as “[t]he means by which a right is enforced or the violation of a right is prevented, redressed, or compensated.” Id. at 1086 (quoting Remedy, Black’s Law Dictionary 1526 (3d ed. 1933)) (quotation marks omitted). And it asserts that “remedy” does not necessarily equate with “relief.” See id. I have no 'quarrel with this definition up to this point.
In fact, I agree with it. And the interpretation of the saving clause that I offer is entirely consistent with this definition. Under the language of § 2255, the “right [to be] enforced,” see id. is the right protected by the Suspension Clause not to be detained in violation of the separation of powers or the principle of limited government powers, through the impermissible interpretation of the statute or other device used to detain the prisoner, that has since been invalidated by the Supreme *1154 Court’s retroactively applicable new rule of substantive law — whether constitutional or statutory. See supra at 1132-40.
Regardless of whether the Supreme Court’s new substantive rule is characterized as constitutional or statutory in nature, the right under which access to that rule is claimed is constitutional — a constitutional right protected by the Suspension Clause not to be detained in excess of the government’s powers. And, as a practical matter, that constitutional right, which is based on a new rule of substantive law made retroactive to eases on collateral review by the Supreme Court, that was previously unavailable, cannot be vindicated until after the Supreme Court announces the new rule.[27]
But § 2255, in the absence of the saving clause, does not provide a “remedy,” or “means by which a right is enforced,” Maj. Op. at 1086, when it comes to new rules of statutory law. For this reason, § 2255 (without the saving clause) fails to provide a “meaningful opportunity” for a prisoner to test the legality of his detention when the Supreme Court issues a retroactively applicable new rule of statutory law. See supra at 1135-40. As a result, the construction of the saving clause that I put forward comports with the Majority’s initial proposed definition of “remedy.”
Next, the Majority initially defines “to test” as meaning “to try.” Maj. Op. at 1086-87 (citing Test, 11 Oxford English Dictionary 220 (1st ed. 1933)). It then turns to Prost to argue that in order “to test,” a “petitioner [must have] an opportunity to bring his argument.” Id. (quoting Prost, 636 F.3d at 584) (quotation marks omitted). Setting aside for the moment the facts that Prost expressly declined to consider constitutional issues in its interpretation, see supra at 1152, and that “an opportunity” must be a “meaningful opportunity,” see id. at 1135-40, I do not take issue with this construction.
And as with the Majority’s dictionary definition of “remedy,” the construction of the saving clause that I offer in this dissent is consistent with the Majority’s initial definition of “to test.” A prisoner whose argument depends on a “right [that] has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review” has no argument based on that right until the Supreme Court has newly recognized the rule on which the right invoked is based and rendered that rule retroactively applicable. So that prisoner has no opportunity — and certainly no meaningful opportunity — to test the legality of his detention until after the Supreme Court announces a new retroactively applicable rule of substantive law, whether constitutional or statutory.
Nor do I object to the Majority’s initial definition of “detention,” which it defines *1155 as “[k]eeping in custody or confinement,” Maj. Op. at 1089 (quoting Detention, 3 Oxford English Dictionary 266 (1st ed. 1933)), and “[t]he act of keeping back or withholding, either accidentally or by design, a person or thing,” id. (quoting Detention, Black’s Law Dictionary 569 (3d ed. 1933)). Once again, the interpretation of the saving clause presented in this dissent comports with these definitions of “detention” and ascribes a different meaning to “sentence” and “detention” as used in § 2255. See supra at 1129-30 (citing Brown, 817 F.3d at 1284). As I have explained, testing the “legality of detention” means bringing a claim that, if correct, would result in a reduced period of detention, not just a reduced sentence on a given count that may or may not affect the overall period of detention.
But the Majority’s explanation of these terms’ meanings flies off the rails when the Majority contorts its original version of its definitions to fit its vision of the saving clause’s meaning. For instance, in interpreting “remedy” and “to test” to mean that the saving clause precludes a claim when a prisoner had an opportunity under § 2255 to raise an argument on an issue— as opposed to a right based on a new retroactively applicable rule, see Maj. Op. at 1086-87 — the Majority ignores the meaning of “right” as that term is used in § 2255(f)(3), see supra at 1150-51, and proves too much.
Under the Majority’s construction, in' the absence of subsection (h)(2), the saving clause would not allow a prisoner to bring a second or successive claim based on a new retroactively applicable rule of constitutional law because the prisoner would have had the opportunity to have made the argument on the same general issue on his initial § 2255 motion, before the Supreme Court announced a new retroactively applicable rule of constitutional law on that issue. Necessarily, then, in the Majority’s view, Congress could have chosen to ban second or successive claims based on a retroactively applicable new rule of constitutional law.
But Congress’s inclusion of the subsection (h)(2) exception to the ban on second or successive motions was not optional. The Suspension Clause required it. See supra at 1133-40. As we have discussed, the separation-o‘f-powers doctrine and the principle of limited government powers “must inform the reach and purpose of the Suspension Clause.” Boumediene, 553 U.S. at 746, 128 S.Ct. 2229 (emphasis added). And “the ‘retroactivity’ of a new constitutional rule [is] a function of the scope and purposes of the habeas corpus writ,” Mackey, 401 U.S. at 684, 91 S.Ct. 1160 (Harlan, J., concurring), so new constitutional rules are retroactively applicable on collateral review because the Suspension Clause requires it, not because Congress was in a generous mood when it enacted AEDPA. Any construction of the saving clause that does not acknowledge this fact-does not account for the saving clause’s function to save § 2255 from unconstitutionality.
As for the Majority’s reinterpretation of (as opposed to initial citation to) the dictionary definitions for “detention,” see Maj. Op. at 1089-90, it relies on no sources that support it,[28] other than Judge Pryor’s own concurrence in Samak, and it conflicts directly with the plain language of § 2255. *1156 See supra at 1147-49. For this reason, it cannot be correct.
Finally, and perhaps most glaring of all, the Majority’s definition of “inadequate or ineffective” entirely fails to account for the saving clause’s constitutional-failsafe function. We know that “[t]he [Supreme] Court placed explicit reliance upon [the saving clause] provisions in upholding [28 U.S.C. § 2255 and the District of Columbia equivalent of § 2255] against constitutional challenges.” Boumediene, 553 U.S. at 776, 128 S.Ct. 2229 (citing Swain, 430 U.S. at 381, 97 S.Ct. 1224; Hayman, 342 U.S. at 223, 72 S.Ct. 263). If, as the Majority’s construction suggests, the term “ineffective” does not require consideration of claims that the Suspension Clause requires be heard, what part of the saving clause authorizes consideration of constitutional challenges when no other part of § 2255 does? The Majority offers no alternative, even though the Supreme Court has repeatedly acknowledged § 2255’s constitutional-failsafe function. See id.
For all of these reasons, the Majority’s interpretation of the saving clause cannot be correct.
IV.
Chief Judge Carnes’s concurrence asserts that I engage in judicial activism[29] in this dissent, “ ‘improving]’ the statute by writing in the exception that [I] favor[ ].” E. Carnes Op. at 1100. As always with the Chief, his concurrence is beautifully written. So it would be easy to succumb to its seductive Siren song without considering whether the comments in the concurrence are, in fact, correct.
But let’s take a moment to think about the concurrence’s premise. In the concurrence’s view, I have “added a third exception” to subsection (h)’s bar on second or successive claims, and I have done so because that is the result I allegedly desire. Id. at 1100. So as the concurrence sees things, before we even start our analysis of the saving clause, we necessarily must agree to a ground rule that the saving clause cannot have a constitutional-failsafe purpose as it relates to second or successive claims. For if it does and any constitutionally required second or successive claims are not accounted for by subsection (h)’s exceptions to the bar on second or successive claims, the judge who observes this deficiency must be a judicial activist.
In an ironic twist, though, the concurrence’s approach itself embodies judicial activism: instead of reviewing the text and relevant precedents and seeing where they take us, it begins with an end in mind before analysis even starts — and it does so despite the fact that the Supreme Court has reminded us on more than one occasion that the saving clause must have a constitutional-failsafe function to protect § 2255 from unconstitutionality. See Boumediene, 553 U.S. at 776, 128 S.Ct. 2229 (citing Swain, 430 U.S. at 381, 97 *1157 S.Ct. 1224; Hayman, 342 U.S. at 223, 72 S.Ct. 263).
Even if we were to accept the concurrence’s accusation at face value, exactly when does the analysis in this dissent engage in judicial activism? When it spends seventeen pages parsing the text, grammar, and function of § 2255? When it relies on the Supreme Court cases Hayman, Swain, and Boumediene for the proposition that the saving clause acts as a constitutional failsafe to protect § 2255 from unconstitutionality? When it invokes Boumediene, The Federalist No. 84, and Hamdi to show that the separation-of-powers doctrine and the principle of limited government powers drive habeas and the Suspension Clause? Or perhaps when this dissent cites Justice Harlan’s concurrence in Mackey and the Supreme Court’s opinions in Bousley and Welch to show that retroactivity doctrine — including ret-roactivity doctrine as it relate to new rules of statutory law — is required by the same separation-of-powers and limited-government concerns that animate habeas and the Suspension Clause?
Maybe the judicial activism occurs when this dissent suggests the Majority’s contention that execution-of-sentence and pretrial detention claims may be considered under the saving clause conflicts with the language and function of § 2255. I don’t know. And the reason I don’t know is that the Chiefs concurrence does not direct its criticism to any particular step in my analysis, instead just asserting that I have added a third exception to § 2255’s bar on-second or successive motions.
I acknowledge that this dissent may present a new theory on why the saving clause requires consideration of second or successive claims based on a retroactively applicable new rule of statutory law— though, of course, it is not the first opinion to conclude that second or successive claims based on a retroactively applicable new rule of statutory law may be considered under the saving clause. See, e.g., Wofford, 177 F.3d at 1244 (E. Carnes, J.);[30] Triestman v. United States, 124 F.3d 361, 363 (2d Cir. 1997); In re Dorsainvil, 119 F.3d 245, 251 (3d Cir. 1997); In re Jones, 226 F.3d 328, 333-34 (4th Cir. 2000); Reyes-Requena v. United States, 243 F.3d 893, 904 (5th Cir. 2001); Wooten v. Cauley, 677 F.3d 303, 307-08 (6th Cir. 2012); In re Davenport, 147 F.3d 605, 611-12 (7th Cir. 1998); In re Smith, 285 F.3d 6, 8 (D.C. Cir. 2002).
Presenting a new theory, however, is not the same thing as engaging in judicial activism. If it were, we could not have circuit splits unless judicial activism occurred — any circuit that arrived at an interpretation contrary to the first court’s, resolution of the issue would necessarily be engaging in judicial activism just by pro *1158 posing a new theory. But the mere fact that judges may disagree over the meaning of a provision and may offer an alternative theory to explain the basis for the disagreement does not mean that a judge is engaged in judicial activism.
Instead, we evaluate that by how the new theory is supported. We must consider whether the new theory is based on a fair interpretation of the statutory text and binding precedent. I respectfully submit that this dissent’s theory is.
This dissent relies on the plain meaning of § 2255’s text, to the extent that it is unambiguous. And to the extent that it is not, this dissent reviews, considers, and then simply points out existing, though perhaps not previously observed, lines among Supreme Court cases to inform the meaning of the saving clause’s constitutional-failsafe function. That is not judicial activism; it is legal analysis.
Y.
The range of interpretations courts— including ours — have applied to § 2255(e) may make construing the saving clause seem like the Kobayashi Maru[31] of law training exercises. But, actually, the saving clause has a single correct meaning, and the secret to understanding it lies in the text of the clause, as informed by the constitutional-failsafe function of the clause. That meaning requires consideration of second or successive claims, the failure of which to consider would render § 2255 constitutionally deficient. Second or successive claims based on retroactively applicable new rules of statutory law announced by. the Supreme Court fall within this category. Since McCarthan invokes such a rule, I would reverse the denial of his claim and remand for the district court to consider the merits in the first instance. Because we don’t do that, I respectfully dissent.

. Our Circuit has, in the past, referred to the clause as the “savings clause.” See, e.g., Wofford, 177 F.3d at 1237. I agree with the Majority, see Maj. Op. at 1081-82, that we should refer to it as the "saving clause.” Indeed, the Supreme Court has called this clause the "saving clause.” Boumediene v. Bush, 553 U.S. 723, 776, 128 S.Ct. 2229, 171 L.Ed.2d 41 (2008).

. My analysis does not foreclose the possibility that a constitutional deficiency of another type may allow for other kinds of second or successive claims to be considered under the saving clause. But because this case involves only a second or successive claim that relies on a retroactively applicable new rule of law, I do not analyze what types of other claims, if any, might so qualify.

. This must be a § 2255 motion, as opposed to any other kind of motion, for two reasons: (1) the preceding term "by motion” is shorthand for the "by motion pursuant to this section” phrase used earlier in § 2255, and (2) no other type of relevant motion would be filed with the sentencing court.

. Of course, the language of the saving clause also anticipates the filing of some initial claims. The statute employs the language, "the applicant has failed to apply for relief, by motion, to the court which sentenced him," which means that the applicants to whom it refers are first-time filers in the sense that they have not yet filed a § 2255(a) motion with the court that sentenced them. This language appears in the disjunctive, as an alternative to "such court has denied him relief.” So first-time claimants, like applicants who bring second or successive claims, also are entitled to bring a § 2241 petition under the saving clause, provided the saving clause is otherwise satisfied. These first-time claimants would be those who, for practical reasons, cannot obtain “adequate” relief through a § 2255(a) proceeding in the court that sentenced them. See infra at 1130-32.

. After today's decision, obviously, at least some aspects of Williams’s interpretation of § 2255(e) are no longer valid. Whether the determination that § 2255(e) is jurisdictional withstands our sua sponte abrogation of our prior interpretation of § 2255(e) in cases such as Williams is unclear.

. The Majority argues that subsections (f) and (h) also "authorize” a prisoner to apply for relief. Based on the language of these sections, I respectfully disagree. But even if the Majority is right about that, it would have no impact on the ultimate conclusion that the saving clause requires consideration of second or successive claims that are based on a retroactively applicable new rule of statutory law. See infra at 1150-51 & 1151 n.22. Ironically, though, if the Majority is correct and subsections (f) and (h) also "authorize” a prisoner to apply for relief under § 2255, that fact would undermine some of the Majority's criticism of my theory in ways additional to those that exist if subsections (f) and (h) do not "authorize” a prisoner to apply for relief under § 2255. See id.; see also id. at 1146.

.The words "who is” are understood at the beginning of the clause "claiming the right to be released upon the ground[s] [articulated in subsection (a)].” See, e.g., William Strunk Jr. & E.B. White, The Elements of Style 16 (4th *1127 ed. 2000) (providing as an example of a restrictive clause, “People sitting in the rear couldn’t hear.”).

. Section 2241 “descends directly from § 14 of the Judiciary Act of 1789[,] [which authorized federal courts to issue writs of habeas corpus,] and the 1867 Act [that amended the Judiciary Act of 1789].” INS v. St. Cyr, 533 U.S. 289, 305 & n.25, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001).

. Both statutes were enacted in 1948. Section 2241(e)(2) refers expressly to habeas petitions "relating to any aspect of the detention, transfer, treatment, ... or conditions of confinement." (emphasis added). Though it provides for no jurisdiction for such claims when they are raised by enemy combatants, the unambiguous negative implication is that courts have jurisdiction to entertain non-enemy-combatant prisoners’ habeas petitions raising execution-of-sentence claims. See Scalia & Garner, supra, at 107-11.

. The Majority relies on Prost v. Anderson, 636 F.3d 578, 588 (10th Cir. 2011), to argue that the remedy by § 2255 is inadequate where an otherwise-permissible § 2255 claim that challenges the legality of detention cannot proceed because the sentencing court has dissolved, as in the case of a military prisoner. Maj. Op. at 1092-93. Judge Jordan disagrees. Under the current state of the law, I do not believe that the answer to this question is clear. As far as I can tell, neither we nor the Supreme Court has yet determined whether military prisoners’ habeas corpus petitions pass through the saving clause or whether instead they are authorized directly under § 2241. The answer to this question depends, in turn, on whether the military petitioner’s claim is "authorized” by § 2255. See 28 U.S.C. § 2255(e). For if it is, the language of § 2255(e) requires him to bring his habeas petition pursuant .to § 2255’s strictures, meaning he must bring it under the saving clause. See id. But whether § 2255 “authorize[s]” the military prisoner's claim — a question that turns on whether a military court is a "court established by Act of Congress” within the meaning of § 2255(a) — does not appear to be a settled matter. Judge Jordan refers to Frost's citation of Ackerman v. Novak, 483 F.3d 647 (10th Cir. 2007), a case in which the Tenth Circuit held that, "because a military court martial is not a ‘court of the United States' within the meaning of § 2244(a), the prisoner did not need to obtain circuit authorization to file a § 2241 habeas corpus petition.” Jordan Op. at 1109-10 (quoting Ackerman, 483 F.3d at 651-53). But that does not tell us whether a military tribunal is a "court established by Act of Congress” within the meaning of § 2255(a). And the Tenth Circuit in Ackerman found that "military justice courts are established by an Act of Congress,” even though these courts are not considered “courts of the United States.” 483 F.3d at 652. So Ackerman may provide some support for the proposition that' military .prisoners’ habeas petitions must pass through the saving clause. Yet while the court in Ackerman found § 2255 unavailable, see id. at 649 n.2, the court did not pass on the applicability of the saving clause. In sum, I find the law unclear as to whether a prisoner in custody under sentence of a military court brings a § 2241 petition directly under § 2241 or whether that petition must first pass through § 2255(e). If the latter, then § 2255 is “inadequate” to test the legality of the petitioner's detention, given the practical difficulty created by the dissolution of the petitioner’s sentencing court. It is likewise not clear to me, as it is not clear to Judge Jordan, whether the habeas petitions of prisoners convicted in territorial courts that no longer exist must pass through the saving clause. See Jordan Op. at 1110-11. If the *1132 saving clause is necessary, however, then I suspect that it would be because § 2255 is "inadequate” for these petitioners as well, given the logistical conundrum posed by the non-existence of their sentencing courts. We need not resolve these vexing questions today. In any case, we know that in 1948, Congress was concerned with the practical and logistical problems attendant to the administration of habeas corpus, and Congress was likely mindful that such problems may continue to exist even after the enactment of § 2255. By including the saving clause in § 2255, Congress protected against that problem.

. As discussed below, if "ineffective” did not include the definition of "constitutionally deficient” in the context of the saving clause, the saving clause would not serve the failsafe-constitutional purpose that the Supreme Court has repeatedly relied upon to find § 2255 constitutional. See Boumediene, 553 U.S. at 776, 128 S.Ct. 2229 ("The [Supreme] Court placed explicit reliance upon [the saving clause] provisions in upholding [28 U.S.C. § 2255 and the District of Columbia equivalent of § 2255] against constitutional challenges.” (citing Swain, 430 U.S. at 381, 97 S.Ct. 1224; Hayman, 342 U.S. at 223, 72 S.Ct. 263)).

. When Congress initially passed § 2255, the statute had no numbered subsections. But the language of the saving clause — what is now located at § 2255(e) of the current version of the statute — appeared verbatim as part of the original enactment of § 2255. See Pub. L. No. 80-773, 62 Stat. 869, 968 (1948).

. And with good reason: "The accumulation of all powers, legislative, executive, and judiciary, in the same hands, whether of one, a few, or many, and whether hereditary, selfap-pointed, or elective, may justly be pronounced the very definition of tyranny.” The Federalist No. 47 (James Madison), available at https:// www.congress.gov/resources/display/conteni/ The + Federalist + Papers (last accessed Jan. 3, 2017).

. Prisoners may also obtain relief on collateral review of claims based on a "new watershed rule[] of criminal procedure.” Welch, 136 S.Ct. at 1264 (citation and internal quotation marks omitted). These are procedural rules that implicate "the fundamental fairness and accuracy of the criminal proceeding.” Id. (citation and internal quotation marks omitted). To date, the Supreme Court has identified only the right to counsel as falling within this category. See Beard v. Banks, 542 U.S. 406, 417, 124 S.Ct. 2504, 159 L.Ed.2d 494 (2004).

. The Supreme Court held in Johnson that the residual clause of the Armed Career Criminal Act of 1984, 18 U.S.C. § 924(e)(2)(B)(ii), is unconstitutionally vague and therefore void. See Johnson, 135 S.Ct. at 2555-63.

. For this reason, Bryant’s test, see 738 F.3d at 1274, which requires that binding precedent have foreclosed the prisoner’s claim at the time of his first motion to vacate in order for the prisoner to access habeas through the saving clause, cannot be correct. Under *1140 Bryant, the prisoner whose claim is the one that establishes the precedent that squarely forecloses the claims of those who come after him has no meaningful opportunity to present his second or successive claim based on the new retroactively applicable rule of statutory law that allows those who follow to present their second or successive claims once the Supreme Court issues its new retroactively applicable rule of statutory law.

. A reader might wonder why Congress did not enumerate this type of claim along with the two types of claims listed in § 2255(h), particularly § 2255(h)(2). This question initially bothered me as well. So I extensively examined the legislative history for § 2255, but I could not find an explanation for why Congress enacted § 2255(h)(2). Based on my review of Supreme Court precedent, however, I believe the answer is that § 2255(h) was Congress’s effort to ensure that constitutionally required second or successive claims not be precluded by AEDPA’s amendments. But when Congress enacted § 2255(h) in 1996, the Supreme Court had not yet ruled that new statutory rules could be retroactive just like new constitutional rules could be. Instead, at that time, as far as claims based oh retroactively applicable new rules were concerned, Congress likely understood the Constitution to require consideration of only those claims based on new substantive rules of constitutional law, as Justice Harlan's Mackey concurrence had suggested. See Mackey, 401 U.S. at 684, 91 S.Ct. 1160 (Harlan, J., concurring). *1141 So while I read § 2255(h) as Congress's attempt to ensure that § 2255 preserved habe-as’s constitutional scope, I read § 2255(e) in tandem as a failsafe mechanism that Congress continued to allow to exist because it recognized that it may have overlooked constitutionally required claims. Congress could have repealed § 2255(e) in 1996 if it intended § 2255(h) to render § 2255(e) superfluous, but it did not. To the extent that an argument might be made that Congress kept the saving clause for the separate reason that the clause was needed to provide relief where practical considerations arose, Congress could have amended the clause to expressly limit it to that situation, such as by explicitly referring to "practical considerations” or by removing the language "or ineffective.” Again, it did not. And to the extent that some might note that habeas corpus did not always require what are now considered to be retroactively applicable new rules of statutory construction to be retroactively applicable, the Supreme Court has stated that "Felker, Swain, and Hayman stand for the proposition that the Suspension Clause does not resist innovation in the field of habeas corpus.” Boumediene, 553 U.S. at 795, 128 S.Ct. 2229. As the Court has further explained, "[hjabeas is not a static, narrow, formalistic remedy; its scope has grown to achieve its grand purpose.” Id. at 780, 128 S.Ct. 2229 (quoting Jones v. Cunningham, 371 U.S. 236, 243, 83 S.Ct. 373, 9 L.Ed.2d 285 (1963) (internal quotation marks omitted)). So the fact that Congress may have viewed the scope of habeas narrowly in 1996 is no answer to the Supreme Court’s current explanation of the Suspension Clause’s constitutional scope.

. Of course, to the extent that McCarthan procedurally defaulted the claim and the government raises this as an affirmative defense, McCarthan would have to show "cause and prejudice” for the default or “actual innocence” in order for his claim to be considered on the merits. See Bousley, 523 U.S. at 621-22, 118 S.Ct. 1604.

. Section 2244(b) provides,
(b)(1) A claim presented in a second or successive habeas corpus application under section 2254 that was presented in a prior application shall be dismissed.
(2) A claim presented in a second or successive habeas corpus application under section 2254 that was not presented in a prior application shall be dismissed unless—
(A) the applicant shows that the claim relies on a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
(B)(i) the factual predicate for the claim could not have been discovered previously through the exercise of due diligence; and
(ii) the facts underlying the claim, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

. The Exceptions Clause provides, in relevant part, "In all the other Cases ... the supreme Court shall have appellate Jurisdiction, both as to Law and Fact, with such Exceptions, and under such Regulations as the Congress shall make.” U.S. Const. art. III, § 2, cl. 2.

. Lewis Carroll, Alice's Adventures in Wonderland (BookVirtual Digital Ed. v.1.2 2000), available at https://www.adobe.com/be_en/ active-use/pdi/Alice_in_Wonderland.pdf (last accessed Jan. 3, 2017).

. The upshot of this fact is that the Majority’s contention that subsections (f) and (h) “authorize” prisoners to apply for relief by § 2255 motion, see Maj. Op. at 1093-94, has no bearing on the ultimate construction of the saving clause to require consideration of second or successive claims that rely on a new retroactively applicable rule of statutory law. Even if subsections (f) and (h) "authorize” prisoners to apply for relief by § 2255 motion, that means that subsection (f) necessarily imposes a one-year statute of limitations on second or successive claims that rely on a new retroactively applicable rule of statutory law, which does not begin to run until the Supreme Court recognizes the right by announcing the new rule, and subsection (h) must give way to the saving clause to the extent that its failure to do so would cause § 2255 to violate the Suspension Clause.

. The Majority inaccurately characterizes this dissent as taking the position that any prisoner who fails any procedural bar in section 2255 can petition for a writ of habeas corpus. Maj. Op. at 32-33. That has never been my argument. Rather, I contend that a prisoner whose second or successive sentencing claim is otherwise barred by § 2255 from being brought may have his claim considered under the saving clause only if failure to consider the claim would render § 2255 constitutionally deficient, as in the case of second or successive claims based on a retroactively applicable new rule of statutory law.

. Indeed, that’s exactly what Congress did with respect to the claims identified at § 2255(f) when it passed AEDPA. Before AEDPA was enacted, habeas doctrine' allowed courts to consider petitions "filed after even extraordinary delays.” Day v. McDonough, 547 U.S. 198, 215, 126 S.Ct. 1675, 164 L.Ed.2d 376 (2006) (Scalia, J., dissenting) ‘ (citing cases where petitions were entertained 40 years, 36 years, and 24 years after the filing prisoner was sentenced).

. Though the Majority claims to follow Prost's interpretation of the saving clause, see Maj. Op. at 1080, Prost also does not adopt the Majority’s position that the saving clause authorizes execution-of-sentence and pretrial-detention claims. That construction appears to have originated as purely an invention of Judge Pryor’s. See Samak, 766 F.3d at 1291 (W. Pryor, J., concurring).

. Again, the Majority misrepresents my dissent when it asserts in response, "[T]he writ has not been suspended whenever a prisoner cannot file a successive collateral attack.” Maj. Op. at 1095. That has never been my argument. Instead, I contend that a procedural mechanism that fails to allow for consideration of second or successive claims that rely on a new retroactively applicable rule of statutory law violates the Suspension Clause.

. The Majority asserts that "this argument ignores that litigants often make novel arguments in the hope that a court will adopt them as a matter of first impression or in a rejection of past precedent” and that "[i]t is unclear why the chance to have precedent overruled en banc or by the Supreme Court would not qualify as a theoretically successful challenge or meaningful opportunity.” Maj. Op. at 1087, 1091. This argument misses the point. The fact that litigants may raise novel arguments to courts before such time that the Supreme Court has issued a new rule of substantive law made retroactive to cases on collateral review, that was previously unavailable, does not mean that litigants have an opportunity at all — let alone a meaningful opportunity — to invoke a right that is based on a new retroactively applicable rule of substantive law issued by the Supreme Court, which was not recognized prior to the Supreme Court's announcement of it. How could litigants when the Supreme Court had not yet recognized the very rule on which their right relies?

. The Majority cites several cases, but they do not stand for the proposition that exeCution-of-sentence claims are cognizable under the saving clause. See Maj. Op. at 1089-90. On the contrary, without mentioning the saving clause in any way, they assert that execution-of-sentence claims are not appropriately brought under § 2255 but rather under § 2241 — my point exactly.

. The Chief’s concurrence takes issue with my characterization of its criticism as charging that I have engaged in judicial activism. See E. Carnes Op. at 1100-01. So I pause to explain why I describe its criticism that way. True, the concurrence never actually employs the phrase “judicial activism.” Instead, it describes my dissent as having " ‘improve[d]’ the statute by writing in the exception that [I] favor[],” “amend[ed] the statute,” engaged in an activity that is not in line with "the proper role of the judiciary,” "judicial[l]y revis[ed] ... [the] statute!],” imposed my "musings, whether pragmatic or otherwise,” on the statute, "design[ed]” a statute, and "rewritten]” the statute. Id. at 1100-01. My goodness! The concurrence sure thinks I’ve been very busy doing our legislators’ jobs. And "[(legislating from the bench ... [is just] another name for judicial activism.” Thomas L. lipping, Legislating From the Bench: The Greatest Threat to Judicial Independence, 43 S. Tex. L. Rev. 141, 146 (2001).

. The Chief's concurrence falls on its Wofford sword in the most eloquent fashion. See E. Carnes Op. at 1101. Though I can't help but admire and be entertained by the Chief’s way with words, I see no reason for the concurrence to apologize for Wofford or its progeny. I do not aim to impose blame on the Chief or this Court for our prior jurisprudence on the saving clause. Our understanding of the law should develop in response to Supreme Court precedent, and I agree with the concurrence that we should reconsider our views when another demonstrates the incorrectness of an existing precedent. I also share the concurrence’s position that our analysis of the saving clause should not start from Wofford's analysis and “revisfe]” it. Id. at 1101. Instead, our analysis must begin with the statutory text and function, as informed, where the text is ambiguous, by Supreme Court precedent. And it should end wherever that analysis may take us — without some preexisting idea of where that should be. I cite Wofford for only the point that my ultimate conclusion — that second or successive claims based on a retroactively applicable new rule of statutory law may be considered under the saving clause — is not novel.

. In the Star Trek universe, Kobayashi Maru is a training exercise for Starfleet Academy cadets. In it, the cadet must determine whether to attempt a rescue of the Kobayashi Maru, a disabled Starfleet ship, risking death to the rescuers, or whether instead to decline the rescue of the Kobayashi Maru, risking death to those onboard the stranded vessel. Though cadets taking the training exercise are under the impression that it tests their strategic skills as ship commanders, unbeknownst to the cadets, the exercise is designed as an unwinnable scenario and is administered for the purpose of testing the character of the cadets. See Star Trek (Paramount Pictures, Spyglass Entertainment, Bad Robot, Mavrocine Pictures GmbH & Co. KG 2009); Star Trek II: The Wrath of Khan (Paramount Pictures 1982).